BASIL A. MOORE *v.* COMMISSIONER OF EMPLOYMENT
SECURITY *et· al.*

(*Knoxville,* September Term, 1954.)

Opinion filed December 16, 1954.

WILLIAM L. MOORE, of Nashville, for appellant, Commissioner.

HARRY L. GARRETT, of Kingsport, for appellee, Claimant.

MR. JUSTICE BURNETT delivered the opinion of the Court.

Basil Moore filed a claim for unemployment compensation which was heard by the Appeals Referee. The Referee denied the claim. On appeal to the Board of Review that body, after hearing additional evidence of the claimant, likewise denied compensation. As a result of these two findings the present suit was instituted against the Commissioner of the Department of Employment Security and the last employer of Moore, Holston Defense Corporation.

This suit was brought in the Chancery Court by petition for certiorari to review the decision of the Board of Review of the Department of Employment Security above referred to.

The case was heard before the Chancellor on this petition for certiorari and the separate answers of the Commissioner and employer and the certified record of the Board of Review filed in accordance with the writ mentioned. At the conclusion of the hearing the Chancellor put down a decree holding in effect that there was

no evidence in this record to sustain the finding of the Board of Review and that the record showed that the claimant was entitled to unemployment compensation benefits, and he, therefore, reversed the decision of the Board of Review. From this decree of the Chancellor the present appeal comes and we now have the matter for disposition.

The first contention is that the Chancellor went beyond his duty and function under the law in reviewing this proceeding. It is the contention of the appellant, Commissioner, that the only function of the Chancellor in cases of this kind is to review the record of the proceedings before the Board of Review, and to determine therefrom if there was any evidence in such record to sustain the Board's finding of fact, and, if so, that then it is the duty of the court, Chancellor in this instance, to apply the applicable law to such findings.

Code Section 6901.6 (i) provides in part as follows:

"In any judicial proceeding under this section the findings of the board of review as to the facts, if there be any evidence to support the same, shall be conclusive and the jurisdiction of said Court shall be confined to questions of law. * * *"

In a number of cases this Court has dealt with the question here before us. Probably the most lucid statement of the application to be given this statutory provision is a statement of this Court in the case of *Milne Chair Company* v. *Hake,* 190 Tenn. 395, 403, 230 S. W. (2d) 393, 396, wherein this Court, speaking through Mr. Justice Tomlinson, said:

"That being the situation, we cannot say that the decision of the Board of Review is not supported by substantial evidence. The fact that some, or all, of the members of this Court, might have reached a fact

conclusion contrary to that reached by the Board of Review, had we been members of that Board, is immaterial, it being a situation as to which men may reasonably reach the conclusion reached by the Board. The language of our statute by which we are controlled is: 'the findings of the board of review as to the facts, if there be any evidence to support the same, shall be conclusive and the jurisdiction of said Court shall be confined to questions of law.'

" 'A clear limitation of our authority under this statutory prohibition just mentioned is this statement of the Supreme Court of the United States: "The question presented is one of specific application of a broad statutory term in a proceeding in which the agency administering the statute must determine it initially." To sustain the commission's application of this statutory term, we need not find that its construction is the only reasonable one or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings. *The "reviewing court's function is limited."* All that is needed to support the commission's interpretation is that it has "warrant in the record" and a "reasonable basis in law." *Unemployment Compensation Commission of Territory of Alaska* v. *Aragan,* 329 U. S. 143, 67 S. Ct. 245, 250, 91 L. Ed. 136, 145' ". (Italics ours.)

Numerous other cases to the same effect are *Adams* v. *American Lava Corporation,* 188 Tenn. 69, 216 S. W. (2d) 728; *Ezell* v. *Hake,* 184 Tenn. 319, 198 S. W. (2d) 809; *Reese* v. *Hake,* 184 Tenn. 423, 199 S. W. (2d) 569; *Clinton* v. *Hake,* 185 Tenn. 476, 206 S. W. (2d) 889, and *Miller* v. *Wiley,* 190 Tenn. 498, 230 S. W. (2d) 979.

This being the law what is the condition of the record that was before the Chancellor? The Appeals Referee found on certain statements that were introduced before him, along with the depositions of the claimant which were taken before him, that the claimant "was not available for work." This decision as said was appealed to the Board of Review and that Board reviewed the record before it as was heard by the Appeals Referee and then heard the claimant again. From this testimony that Board found that the claimant

"voluntarily quit his work due to the fact that he was working the swing-shift and he considered this change in his routine injurious to his health. He offered no medical or other evidence that the swing-shift was injurious to his health. At the hearing before the Board of Review, claimant stated that he had still not secured employment, but had his application on file at several places; that he had not worked since April and had been living on money which he had saved; that he owned his home and did not have a family. Claimant stated that he was available for employment, but would have to have day work and could not take shift work."

Then in a statement which is filed in the record the claimant said "I could not work shift work due to my health". And in another place he said "I am able, available and willing to work day shift." Then on being questioned he very clearly says that he is willing to do day shift only and that he would not do this swing-shift. This record likewise shows that he had been doing the kind of work for some 18 months when he quit because he felt that his health was injured by having to do this night work. It clearly appears to us from reading this record that the man quit his work because he was put on

night work when he thought he was going to be able to work in the daytime all the time. It seems to us that clearly under these statements then that the man makes himself not available for work. This being true there is ample evidence in the record to support the finding of the Board of Review and the Appeals Referee. This being true, the trial court had no right to go beyond this and make an additional and different finding of fact.

Under Code Section 6901.4(c) for a claimant to be entitled to unemployment compensation he must be ''able * * * and * * * available for work. * *'' When we, as did the Board of Review, examine this evidence that was taken before them, it appears to us that by the limitation the claimant put on his work, that is, when he would work, that he has made himself unavailable for work. In other words the claimant by putting this check on when he would work, has made himself unemployable.

The requirements of our statute that a claimant must be ''able and available for work'' are, as far as we can find and know, a universal requirement of the Unemployment Compensation laws now in effect in the United States. There have been numerous cases dealing with this very question and so far as we can find they are uniform in their holdings.

In a very recent case (December, 1953) the Supreme Court of Minnesota in *Swanson* v. *Minneapolis-Honeywell Regulator Co.*, Minn., 61 N. W. (2d) 526, 531, had the identical factual question before it in reference to availability for work that we have here. The Minnesota Court speaking through its Chief Justice reviewed decisions from many other courts all of which were to the same effect as the conclusion that we have reached here. The Minnesota Court among other things said:

"In deciding whether, under the specific facts, a claimant is attached to the labor market and available for work under the employment and security act, we must construe the act in the light of the declared public policy as expressed in the act. It is clear that the legislature was aware of the social evils accompanying involuntary unemployment. In order to give effect to the act a person must be ready and willing to accept suitable work. The act is intended to benefit persons who are *unemployed through no fault of their own* and who are genuinely attached to the labor market. We hold that a person is not available for work within the meaning of the statute unless he is accessible or attainable for work when suitable work is offered at such hours as are customary in the type of employment to which he is suited.

"When relator refused to accept work commencing at either 7 or 7:30 a. m. she clearly made herself unavailable for work of the character that she was qualified to perform. She took such a position, not for any reason connected with the character of the work itself, but rather because of the situation in her own home. There is nothing in the statute to justify the conclusion that the legislature intended that a claimant might limit her employment to certain hours of the day where the work she was qualified to perform is not likewise limited."

In the case presently before us the claimant quit his job with his employer because, according to his statements, it was making him nervous to work on shift work and he could not eat, although no doctor's statement, or any other medical evidence that the work was the cause of this, was presented by the claimant. And it seems to us that the evidence showed that the man was just in-

sisting that he have day work and that the weight of the evidence clearly is that by shifting to another shift was not making any change in the nature of the work that he was doing.

In view of what we have said above it is necessary that the decree of the Chancellor be reversed and the suit dismissed at the cost of the appellee, Basil A. Moore, and the sureties on his prosecution bond.