ALUMINUM COMPANY OF AMERICA and L. B. JENNINGS,
Commissioner of the Department of Employment
Security,

*v.*

FRED M. WALKER, THOMAS E. ANDERSON,
FRANK A. GRAY, JAMES R. BRADBURN
and JAMES H. STEELE.

(*Knoxville,* September Term, 1960.)

Opinion filed October 7, 1960.

FRANKLIN J. MCVEIGH, E. H. RAYSON, R. R. KRAMER, Knoxville, KRAMER, DYE, MCNABB & GREENWOOD, Knoxville, of counsel, for Aluminum Company of America.

W. L. MOORE, Chief Counsel, and W. D. DODSON, Assistant Chief Counsel, Nashville, for appellant, L. B. Jennings, etc.

THOMAS N. CRAWFORD, JR., Birmingham, Ala., D. H. ROSIER, JR., Maryville, COOPER, MITCH, BLACK & CRAWFORD, Birmingham, Ala., WILLIAMS, HARWELL, HOWSER & THOMAS, Nashville, of counsel, for appellees.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

This is a suit by five employees of the Aluminum Company of America for unemployment compensation benefits claimed by virtue of the Employment Security Law carried in the Code commencing at section 50-1301. The claims were disallowed by the Board of Review because of the refusal of these employees to accept jobs offered them. Several renewals of the offers were declined. The Chancellor reversed on the grounds that the jobs were not suitable within the meaning of the Employment Security Law. The Aluminum Company bases its appeal on the proposition that material evidence supports the conclusion of the Board; hence, that the Chancellor violated the statute, (T.C.A. sec. 50-1325, subd. I) in setting aside that order, with the exception of one item hereinafter acted upon.

These men were laid off for lack of work in the job which each was then doing. At the time of the lay-off each was offered the next best available job in his employer's plant for which he was qualified. Each of these jobs was classified as "laborer" except one classified as "potroom helper", which, in reality, is a laborer. Each of the offered jobs paid approximately $80 per week, while the job from which each had been laid off carried a weekly compensation of from $30 to $50 more.

All of these men started some years back with the Company as laborers. Three of them had progressed in their respective departments at the time of the lay-off from that classification to that of first class electrician; one, battery attendant; and the fifth, truck repair man.

The employees of the Company were members of a certain Union. They were all working under a contract entered into in their behalf by this Union as their bargaining agent with the Aluminum Company as employer. A provision of that contract dealing with a recall of employees who had been laid off for lack of work provides as follows:

" 'If an employee is unemployed at the time of his recall, he is eligible for recall in his own job classification in any department of the Company on the basis of his seniority.

" 'If a laid off employee accepts work in a department, other than his own he is eligible for recall to his own job classification, on the basis of seniority, only in his own department.' "

■ The meaning of that provision is that so long as these electricians remained idle they had a chance of

being recalled as electricians in any of the various departments of the Company where such a job became open and their employee status was such that they were in line for it. And likewise so it was with the battery attendant and the truck repair man. On the other hand, under the above quoted provision of the contract, which the appellees characterize a "peculiar" provision, if any of these five employees had accepted the job of laborer offered him he would not have been eligible for recall to a job in his old classification in any department of the Company except the department in which he was working at the time he was laid off.

A proper conclusion from the evidence is that this was the reason each of these five men refused, and continued to refuse, the job as a laborer. The brief submitted in their behalf seems to concede that to be the cause of their respective rejections of these offers. Here is what this brief says as to that:

> "Suppose claimants, severally or jointly, had accepted the offered job of laborer. These first-class electricians might still be performing 'laboring' work or no work at all. This follows from the peculiar provisions of the Union contract agreed to by the parties.

> \* \* \* \* \* \*

> "Claimants—by keeping their seniority intact—were in effect insuring their chances of working and, by like token, reducing, their chances of suffering future layoffs as junior man no longer holding seniority. \* \* \*"

T.C.A. sec. 50-1324, subd. C.(1) provides that in determining whether the work offered is suitable for the individual "his length of unemployment and prospects for securing local work in his customary occupation, and

the distance of the available work from his residence'' shall be considered. The evidence in this case permits a finding that there were no prospects at the time these men were laid off of securing local work in the particular occupation in which each was engaged at the time he was laid off, or within a reasonable distance from his residence. Nor did it appear that such jobs would open up in the reasonable future. Therefore, material evidence supports the Board's finding that the work offered at the time of the lay-off and at the time of the subsequent offers was ''suitable'' work. It must be kept in mind that ''the officers or boards charged with the duty of determining whether or not work is suitable for a claimant are given much latitude in making their determination.'' 81 C.J.S. Social Security and Public Welfare sec. 201, p. 297, citing cases.

T.C.A. sec. 50-1324, subd. C. provides that an individual shall be disqualified for benefits ''if the commissioner finds that he has failed, without good cause, * * * to accept suitable work when offered him''. An insistence made in behalf of these five appellees is that the ''work offered may be suitable, but the refusal may be for good cause''.

Assume, in so far as it concerns this case, the legal accuracy of this proposition. There remains the question as to whether there is material evidence in the record to support the Board's finding that these men failed ''without good cause'' to accept the work offered. Of course, this means ''without good cause'' as this statutory term is used within the spirit and intent of the Employment Security Law. And, as applied to the evidence in this case

"to sustain the commission's application of this statutory term, we need not find that its construction is the only reasonable one or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings. The 'reviewing court's function is limited.' All that is needed to support the commission's interpretation is that it has 'warrant in the record' and a 'reasonable basis in law.'" *Moore v. Commissioner of Employment Security,* 197 Tenn. 444, 447, 273 S.W.2d 703, 705.

As heretofore found, the evidence permits a finding that each of these five men refused the job offered because it would have rendered him ineligible for a recall to a job in his old classification in any department of the Company, except the one in which he was working at the time of his lay-off. Now, considering the fact that there was no prospect in sight for the restoration of these men to their old job either in their respective departments, or in any other department of the Company, or elsewhere, within that locality or within reasonable traveling distance therefrom, a payment of unemployment compensation to these men, notwithstanding their refusal to accept the next best available work, would have amounted to a financing of each of these men, within the time limitations of the statute, until there became available to him his old job or one paying equal wages.

But it is not the purpose of the Employment Security Law to pay unemployment compensation to employees let out for lack of work until there becomes available to such employee his old job or one paying equal wages. Its purpose is "to provide benefits for periods of unemployment, thus maintaining purchasing

power and limiting the serious social consequences of poor relief assistance". T.C.A. sec. 50-1302.

It is said in the text of 165 A.L.R. at page 1393, quoting from the New Hampshire case of *Hallahan v. Riley*, 94 N.H. 48, 45 A.2d 886, that:

"* * * The cushion of security between jobs provided by the statute was not designed to finance an apparently hopeless quest for the claimant's old job or a job paying equal wages."

There appears in appellant's brief this appropriate quotation from the New York case of *Heater v. Corsi*, 270 App.Div. 311, 59 N.Y.S.2d 793, 795:

"The Unemployment Insurance Law was never intended as a guarantee that a claimant might always obtain benefits unless he was offered employment at precisely the same level of skill at which he was last employed. The only obligation imposed, in so far as this phase of the statute is concerned, is that the employment offered must be one for which the claimant is reasonably fitted by training and experience."

It may be that these men exercised good judgment in refusing the next best available job on the chance that there might be made available in the reasonably near future a job of their old classification in some department of their employer. Under the evidence and plight of this case, however, this was not a risk which must be charged to the official unemployment funds.

The Court's opinion is that the decision of the Board of Review is supported by material evidence, except as to one item to be hereinafter stated; or, to express it differently, that its decision, except as to this item, has

"warrant in the record" and "a reasonable basis in the law". Therefore, its findings, except as to this item, were conclusive upon the Chancellor and are conclusive upon this Court. T.C.A. sec. 50-1325, subd. I.

The excepted item applies to the claim of employee, James R. Bradburn. He was laid off on February 8, 1958. He was recalled on April 17, 1958 and offered work as a laborer. The offer was refused. He was again recalled on June 25 and offered work as a laborer. He accepted. He was then laid off for lack of work on July 6, 1958. He was recalled and offered work as a laborer on September 8, 1958. The offer was accepted. It follows, and the Aluminum Company so admits, that Bradburn was entitled to compensation from the time he was let out on February 8, 1958 through April 16, 1958, and for the period of July 7, 1958 to September 8, 1958. He is not entitled to compensation for the period commencing April 17, 1958 and continuing through June 24, 1958.

The degree to be entered will reverse the decree of the Chancellor and restore the order of the Board of Review except as to so much of the claim of James R. Bradburn commencing with the date of his lay-off on February 8, 1958 and running through April 16, 1958 and except for the period commencing July 7, 1958 and ending September 8, 1958, and for which two periods he will be adjudged unemployment compensation. The Board of Review will enter its order in accordance herewith. Four-fifths of the costs of the proceedings in the Chancery Court and in this Court will be adjudged against appellees, Walker, Anderson, Gray and Steele. One-tenth of all such costs will be adjudged against appellee, Bradburn, and one-tenth against the Aluminum Company of America.