ALADDIN INDUSTRIES, INC., etc., et al., Appellants,

*v.*

MRS. C. FRANK SCOTT, Commissioner, etc., et al.,
Appellees.

407 S.W.2d 161.

(*Nashville,* December Term, 1965.)

Opinion filed September 27, 1966.

D. L. LANSDEN, Nashville, of counsel. WALLER, LANSDEN & DORTCH, Nashville, for appellants.

W. L. MOORE and W. D. DODSON, Nashville, for Mrs. C. Frank Scott, Commissioner.

DAVID VINCENT, LOOBY & WILLIAMS, Nashville, for Mrs. Arclancy Griffin.

MR. JUSTICE WHITE delivered the opinion of the Court.

This is an appeal from a decree of the Chancery Court for Davidson County, Part II, affirming the finding of the Board of Review of the Department of Employment

Security to the effect that an employee who refused a transfer from the day shift to a shift beginning at 4:00 P.M. and ending at midnight, upon the ground that the work offered was not suitable, was entitled to receive benefits under the applicable provisions of the Tennessee Employment Security Act. The employee had performed the same work by day and refused the transfer because she had three children and her husband worked at night. The record discloses that these children were 12, 13, and 15 years of age. These were the essential facts before the Board of Review.

The claimant testified that she was never told, at the time she was first employed, that she might have to work on other shifts; however, there is an indication in the testimony before the Board of Review that she should have known that her same job was being performed on other shifts, and there is evidence that it is a practice that the employer inform an applicant for the job that she may have to work other shifts, although there is no evidence that she was directly informed. We do not consider this a material point in the disposition of this case.

Dale Bevan, Chief Appeals Referee of the Agency, held that "* * * claimant's inability to work on any shift other than the day shift unduly restricts her availability" and that "when claimant left her employment rather than accept a change of shift assignment she left voluntarily and without good cause connected with the work."

The Board of Review of the Agency, on the same facts, reversed the Appeals Referee and sustained claimant's position.

■ The chancellor affirmed the decision of the Board of Review upon the ground there was material evidence to support the finding of facts by said Board. We believe he was in error because the facts in this case are not in dispute. Reasonable minds could not differ about the facts. The facts being that the claimant was unwilling to shift from day to night work because of her domestic situation; that is, that her husband worked at night and she had three children, ages 12, 13, and 15. Of course, it is a well known rule of law that where facts are not in dispute then it becomes the duty of the court to apply the law to the facts without a presumption of the correctness of the action of the Board of Review on such facts.

■ The chancellor felt himself bound by the decision of this Court in *Moore v. Commissioner of Employment Security,* 197 Tenn. 444, 273 S.W.2d 703 (1954). The issue before the Board of Review in the Moore case was whether the claimant made himself available for work within the meaning of 6901.4(C) [T.C.A. sec. 50-1323 (C)]. This Court stated in that case that the ultimate issue before the chancellor, and thus the reviewable issue here, was whether there was any evidence to support this finding. The court's power of review is limited by what is now T.C.A. sec. 50-1325(I), which says that the Board of Review's "findings * * * as to the *facts,* if there be any evidence to support the same, shall be conclusive * * *." (Emphasis supplied). This Court has determined in the *Moore* case that the issue of whether claimant made himself "available for work" is an ultimate fact issue if the facts are in dispute and the Chancery Court is limited to the determination of whether there is any evidence to support the same.

On the question of whether a claimant is available for work within the meaning of the statute, at least two other cases in Tennessee support the *Moore* case: *Reese v. Hake,* 184 Tenn. 423, 199 S.W.2d 569 (1947), and *Duke v. Scott,* 216 Tenn. 391, 392 S.W.2d 809 (1965). In the instant case, appellants claim that the ultimate issue is whether the claimant refused to accept suitable work, without good cause, and thus disqualified herself from benefits under T.C.A. sec. 50-1324(C). Appellant asserts that this is an issue of law, rather than an issue of fact, and, therefore, the Court is not necessarily bound by the conclusion of the Board of Review.

In *Aluminum Company of America v. Walker,* 207 Tenn. 417, 340 S.W.2d 898 (1960), it was held that the court is bound if there is evidence before the Board of Review supporting a finding that suitable work was refused "without good cause." From this case and the *Moore* case, it is our interpretation that the chancellor is bound by the decision of the Board of Review, if there is any material evidence to support this decision. That decision is essentially an application of a board statutory term to certain evidence presented. *Moore v. Commissioner of Employment Security,* supra. The issue before this Court then is whether the evidence before the Board of Review is any basis for its conclusion that the work offered claimant was not suitable.

The issues of whether a claimant is available for work and whether work offered the claimant is or is not suitable are issues to be construed together under T.C.A. secs. 50-1323 and 50-1324. In other words, a claimant is not available for work if she refuses to accept, without good cause, suitable work when offered.

A quote from the case of *Swanson v. Minneapolis-Honeywell Regulator Co.*, 240 Minn. 449, 61 N.W.2d 526 (1953), is cited with approval in the *Moore* case, supra, and indicates what is perhaps the general rule in this area:

> In deciding whether, under the specific facts, a claimant is attached to the labor market and available for work under the employment and security act, we must construe the act in the light of the declared public policy as expressed in the act. It is clear that the legislature was aware of the social evils accompanying involuntary unemployment. In order to give effect to the act a person must be ready and willing to accept suitable work. The act is intended to benefit persons who are *unemployed through no fault of their own* and who are genuinely attached to the labor market. We hold that a person is not available for work within the meaning of the statute unless he is accessible or attainable for work when suitable work is offered at such hours as are customary in the type of employment to which he is suited. 197 Tenn. at 450, 273 S.W.2d at 706.

There are numerous other cases in other jurisdictions, probably a majority, which hold that facts essentially the same as those of the instant case would not support a conclusion that a claimant refused with good cause to accept suitable employment. *Mississippi Employment Security Commission v. Blasingame*, 237 Miss. 744, 116 So.2d 213 (1959); *Goings v. Riley*, 98 N.H. 93, 95 A.2d 137 (1953); *Ford Motor Company v. Appeal Board of Michigan Unemployment Compensation Commission*, 316 Mich. 468, 25 N.W.2d 586 (1947); *Swanson v. Minneapolis-Honeywell Regulator Co.*, supra. Claimant-ap-

pellee cites at least one case to the contrary: *Tung-Sol Electric, Inc. v. Board of Review*, 35 N.J.Super. 397, 114 A.2d 285 (1955). Also, it has been argued by at least one legal writer that suitability is relevant, and that a job is unsuitable where claimant must care for a minor child during the shift offered. Menard, ''Eligibility and Disqualification for Benefits: Refusal of Suitable Work,'' 55 Yale L. J. 134, 147 (1945). T.C.A. sec. 50-1324(C) sets out some guidelines for the commissioner (and, of course, the Board of Review) to follow in determining whether any work is suitable for an individual:

(1) In determining whether or not any work is suitable for an individual, the commissioner shall consider the degree of risk involved to his health, safety, and morals, his physical fitness and prior training, his experience and prior earnings, his length of unemployment and prospects for securing local work in his customary occupation, and the distance of the available work from his residence.

The appellant here contends that the chancellor erred in his holding that the question of whether work offered the employee was suitable was a factual issue and not a legal issue. As stated before, it is our opinion from reading this record that the issue was legal rather than factual. There was no disagreement or dispute about the facts.

The Board of Review held that the work offered Mrs. Griffin was not suitable because it was a shift from day work to part time day and night work; that is, from 4:00 P.M. until midnight, and Mrs. Griffin was the mother of three children and her husband worked at night. The work offered was identical to that being performed by her and the compensation was identical.

To uphold the decision of the Board of Review would be placing in the hands of the employee the right to determine when and under what conditions she would work. Such a holding would unduly restrict the employer and could conceivably, under certain circumstances, make it almost impossible to carry on a business during certain hours.

In the *Moore* case we held that a workman who quit his work because of a transfer from a day to a night shift was not available for work within the meaning of the Act, and, therefore, not entitled to unemployment benefits. In that case the Board of Review had found the facts as stated and had concluded that the employee's claim for compensation should be denied. The chancellor reversed the Board and this Court decided that the chancellor was in error and concluded that the employee, thus limiting his availability for work, was not eligible for benefits.

The Court, in that case, speaking through Mr. Justice Burnett, now Chief Justice, said:

Under Code Section 6901.4(c) [now T.C.A. sec. 50-1323(C)] for a claimant to be entitled to unemployment compensation he must be ''able * * * and * * * available for work. * * *'' When we, as did the Board of Review, examine this evidence that was taken before them, it appears to us that by the limitation the claimant put on his work, that is, when he would work, that he has made himself unavailable for work. In other words the claimant by putting this check on when he would work, has made himself unemployable.

The requirements of our statute that a claimant must be ''able and available for work'' are, as far as we can find and know, a universal requirement of the Unem-

ployment Compensation Laws now in effect in the United States. There have been numerous cases dealing with this very question and so far as we can find they are uniform in their holdings. [197 Tenn. at 449.]

The Court then quoted with approval from *Swanson v. Minneapolis-Honeywell Regulator Co.,* supra.

■ The guidelines for determining suitability for work as set out in the Code are not necessarily exclusive as to when compensation will be granted. However, it is our conclusion that under most favorable guidelines the determination of the Board of Review and the chancellor are not supported, as a matter of law. The facts are not in dispute, therefore, it becomes the duty of the Court to apply the law to the undisputed facts and in doing this we must reverse and dismiss this case.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.