Ernest GRIGGS et al., Appellants,

v.

Bryan W. SANDS et al., Appellees.

Ernest GRIGGS, Commissioner of Employment Security of the State of Tennessee, Appellant,

v.

Melba T. BLACKBURN et al., Appellee.

Supreme Court of Tennessee.

Aug. 18, 1975.

Sam J. McAllester, Jr., Chief Counsel, Peggy F. Williams, Asst. Counsel, Nashville, for appellant.

Cecil D. Branstetter, Carrol D. Kilgore, Nashville, for appellees.

## OPINION

HARBISON, Justice.

These consolidated cases present the same issues for determination on appeal. They were tried and decided in different courts below on separate petitions for certiorari, seeking review of a decision of the Board of Review of the Tennessee Department of Employment Security, rendered on December 6, 1971.

The basic issue presented for decision is whether or not a back-pay award, made to discharged employees by an arbitrator, under a collective bargaining agreement, is to be treated as "wages" under the terms of the Tennessee Employment Security Law, so as to entitle the Department of Employment Security to a refund of unemployment benefits paid to the employees. An incidental question, raised by the decision of one of the chancellors below, is whether or not the terms and provisions of the Tennessee Employment Security Law authorize the Department to seek reimbursement in cases such as this.

These questions, or issues substantially similar to them, have been the subject of a number of decisions in courts of other states, but they appear to be issues of first impression in this state.

There is no dispute as to the facts of the cases, which involve five individual claimants, as the matter comes before this Court. These individuals were employees of the Heil-Quaker Corporation. Each was discharged from his employment on October 15, 1969 for alleged violation of the terms of a collective bargaining agreement between their union and the employer. Each employee was discharged for alleged unauthorized participation in a "slow-down" and curtailment of work, after having received a warning and reprimand from the employer.

The employees presented claims for unemployment compensation benefits under the Tennessee Employment Security Law, T.C.A. § 50-1301 et seq. They were initially determined by the Department to be ineligible for benefits under the terms of T.C.A. § 50-1324, subd. B(2). The Appeals Tribunal of the Department, on December 3, 1969, reversed this initial determination and approved the claim of each of the employees, who then received unemployment compensation benefits from the Department, retroactive from the time he was discharged.

In this interim, the employees had filed a grievance under the collective bargaining agreement, which is not in the record and the terms and provisions of which were not before the courts below and are not before this Court.

There is a stipulation in the record to the effect that the grievance was heard before an arbitrator, who rendered his decision on March 3, 1970, ordering the employer to reinstate the employees "with back pay to make them whole for the economic losses which they have incurred."

Regarding the back pay, the arbitrator ruled:

"In computing the backpay due each employee the Company shall deduct any earnings from each Grievant from the date of his termination to the date of his return to employment. Any Unemployment Compensation benefits received by a Grievant shall also be deducted from the back pay due."

It is further stipulated that the employer voluntarily complied with this award. Each employee apparently was rehired during April 1970, receiving retroactive pay from the time he was discharged until the time he was rehired, less any unemployment compensation and other earnings received by him during the period of his discharge.

The employer submitted information to the Department concerning the results of the arbitration, and on July 16, 1970 the Chief of Benefits of the Unemployment Insurance Division made a redetermination of

the claim of each employee. He concluded that none of the employees was entitled to receive unemployment compensation for the same period of time which was covered by the back-pay award. Accordingly he rescinded the former approval of the claim of each employee, and the claims were rejected as of the date of the filing. An overpayment in the amount of the benefits paid to each claimant was declared, and demand was made upon the employees to reimburse the Department.

Appeals were taken by the employees from this decision to the Appeals Tribunal, and on May 6, 1971 the Chief Appeals Referee issued an opinion affirming the conclusion of the Chief of Benefits. Appeals were then taken by the employees to the Board of Review of the Department, which issued an opinion dated December 6, 1971, affirming the decision of the Appeals Tribunal.

Petitions for certiorari were then filed in the Chancery Courts of Giles County and Marshall County on behalf of different groups of the employees, and each of the Chancellors of those courts concluded that the amounts received by the employees as back pay were not to be treated as "wages" received by them, under the terms and provisions of T.C.A. § 50–1315. Each of the courts below reversed the decision of the Board of Review and disallowed the claim of the Department of Employment Security for reimbursement, in effect holding that each of the employees was entitled as an original matter to the unemployment compensation benefits which he had received, and that there had been no overpayment to any employee.

The Department has duly perfected an appeal to this Court, pursuant to the provisions of T.C.A. § 50–1325(I).

Under the provisions of the statute last cited, the findings of the Board of Review as to the facts are conclusive if there is any material evidence to support them, and, as previously stated, in the present case there is no dispute among any of the parties as to the facts. The statute provides that the jurisdiction of reviewing courts shall be confined to questions of law, assuming that there is material evidence to support the factual conclusions of the Board.

On a number of occasions in the past, this Court has held that to sustain the Board of Review's application of the provisions of the Employment Security Law, "we need not find that its construction is the only reasonable one or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings. The 'reviewing court's function is limited'. All that is needed to support the commission's interpretation is that it has 'warrant in the record' and a 'reasonable basis in law.'" *Milne Chair Company v. Hake*, 190 Tenn. 395, 403, 230 S.W.2d 393, 396 (1950); *Moore v. Commissioner of Employment Security*, 197 Tenn. 444, 273 S.W.2d 703 (1954); *Aluminum Company of America v. Walker*, 207 Tenn. 417, 340 S.W.2d 898 (1960); *Cawthron v. Scott*, 217 Tenn. 668, 400 S.W.2d 240 (1966); *Thach v. Scott*, 219 Tenn. 390, 410 S.W.2d 173 (1966).

As previously stated, this Court does not have before it the collective bargaining agreement, or any question as to the interpretation, meaning or effect of the award of the arbitrator. The employer likewise is not before the Court. Whether the arbitrator was correct or incorrect in requiring deduction of the amounts of unemployment compensation from the back pay received by each employee is a question which is simply not before us and upon which we cannot here make any determination. Whether, if the Department is held to be entitled to obtain reimbursement from an employee, the employee may reopen the arbitration award, or have any further recourse against his employer, are issues which we cannot reach upon this record. Regarding the issue as to where the ultimate responsibility for the unemployment compensation benefits should lie, one of the chancellors below stated the matter very aptly:

"No attempt has been made here to see whether the obligation could in this pro-

ceeding be cast on the employer where it rightfully belongs. Probably that would be a fertile field for investigation."[1]

The amounts claimed to have been overpaid to each employee are in the record before us, but the amounts which each employee actually received from his employer as back pay do not appear. The primary issue for determination by us, however, regardless of any rights or obligations among the employees, the employer and the union, is whether or not such sums as were received by the employees as unemployment compensation benefits were correctly determined to be overpayments in view of the fact that the employees did receive back wages covering the same period of time.

Our examination of the statutes involved and of the cases from other jurisdictions involving substantially similar questions, convinces us that back-pay awards should properly be treated as "wages" and their receipt renders an employee ineligible for unemployment compensation benefits.

Under T.C.A. § 50–1313, "unemployment" is defined:

"An individual shall be deemed 'unemployed' in any week during which he performs no services and with respect to which no wages are payable to him, or in any week of less than full time work if the wages payable to him with respect to such week are less than his weekly benefit amount."

In T.C.A. § 50–1315 are the following provisions:

" 'Wages' means all remuneration paid for personal services from whatever source, including commissions and bonuses and the cash value of all remuneration in any medium other than cash."[2]

It is pointed out by the appellant, and conceded by the appellees, that awards of back pay are treated as the equivalent of "wages" under many federal statutes and for many different purposes. Thus, in the leading case of *Social Security Board v. Nierotko*, 327 U.S. 358, 66 S.Ct. 637, 90 L.Ed. 718 (1946), it was held that an award of back pay to an employee was "wages" within the definition of the Social Security Act, for the purpose of determining contributions to the Social Security fund. It was argued that the employee had not performed any services, and that benefits under the Act related to "wages earned" for "work done". In rejecting this contention the Court held:

"We think that 'service' as used by Congress in this definitive phrase means not only work actually done but the entire employer-employee relationship for which compensation is paid to the employee by the employer." 327 U.S. at 366, 66 S.Ct. at 641.

The United States Supreme Court further said:

"It is also true that in requiring reparation to the employee through 'back pay' that reparation is based upon the loss of wages which the employee has suffered from the employer's wrong. 'Back pay' is not a fine or penalty imposed upon the employer by the Board. Reinstatement and 'back pay' are for the 'protection of the employees and the redress of their grievances' to make them 'whole'. . . A worker is not given 'back pay' by the

---

1. In a case such as this, where an employer was required to pay back-wages to employees, minus the amounts of unemployment compensation benefits which they had received, it was held that the State Employment Security Board might recover from the employer the amounts which the Board paid to employees, under a theory of unjust enrichment. See *State to use of Employment Security Board v. Rucker*, 211 Md. 153, 126 A.2d 846 (1956).

2. Remuneration in excess of $3,300 per annum (at all times pertinent here) is excluded for certain purposes, but all remuneration is included on which the employer is liable for any federal tax for which credit is available for "contributions" paid under the Tennessee Act, T.C.A. § 50–1315.

The records before us do not develop issues under these statutory provisions, and we are simply asked to determine the broad issue of whether back-pay awards generally are within the meaning of the term "wages".

Board equal to what he would have earned with the employer but for the unlawful discharge but is given that sum less any net earnings during the time between discharge and reinstatement." 327 U.S. at 364, 66 S.Ct. at 641.

Concurring, Mr. Justice Frankfurter pointed out that "a man's time may, as a matter of law, be in the service of another though he be inactive." He stated:

"This is, practically speaking, the ordinary situation of employment in a 'stand-by' capacity. . . . The basis of a back-pay order under the National Labor Relations Act . . . is precisely that. When the employer is liable for back pay, he is so liable because under the circumstances, though he has illegally discharged the employee, he still absorbs his time. . . . In short, an employer must pay wages although, in violation of law, he has subjected his employee to enforced idleness. Since such compensation is in fact paid as wages, it is a plain disregard of the law for the Social Security Board not to include such payments among the employees' wages." 327 U.S. at 371, 66 S.Ct. at 644.

In the case of *Manseau v. United States*, 52 F.Supp. 395 (E.D.Mich., 1943), it was held that a back-pay award was taxable as income to the recipient, under the Internal Revenue Code. Quoting from earlier cases the Court noted that reinstatement of an employee and payment for lost time were not common law remedies. Speaking of the National Labor Relations Act, and quoting from an earlier decision of the United States Supreme court, the Court said:

"'The Act . . . is an announcement to employees that if they are discharged for such activity they may have reinstatement and, in proper cases, back pay. Such a promise to employees was essential to assure them immunity for conduct made lawful by the Act.' The employer is also notified that he will have to pay the employee notwithstanding the fact that the employee performs no service. . . . The money received by plaintiff which has been referred to in the findings of fact as back pay is income derived from wages or compensation for personal services within the meaning of Section 22(a) of the Internal Revenue Act . . . ." 52 F.Supp. at 396.

■ Although we recognize, as pointed out in the opinion of one of the courts below, that definitions contained in federal statutes are not necessarily controlling, nevertheless the state unemployment security law is closely geared to various federal statutes, and the definitions and usages given in federal law are persuasive.

The phrases, terms and definitions found in the unemployment compensation laws of the various states are not identical, but in almost every case which we have examined involving unemployment compensation statutes, back-pay awards, whether made by arbitrators or pursuant to the National Labor Relations Act, have been treated as the equivalent of "wages".

One of the leading cases is that of *In re Skutnik*, 268 App.Div. 357, 51 N.Y.S.2d 711 (1944), appeal denied, 268 App.Div. 1072, 52 N.Y.S.2d 937 (1945). In that case back pay was awarded to striking employees, and the Court held that the employees had not, therefore, experienced "total unemployment" as a result of the strike. Accordingly awards of unemployment compensation for the strike period were held to be invalid, and the Industrial Commission was held entitled to make a redetermination of the eligibility of the employees. The employees were required to repay the benefits received. There were some seventy-five claims involved, and the back-pay award to the employees by the National Labor Relations Board did not cover the entire period for which the employees were on strike. Nevertheless they were required to refund the compensation benefits received. In the course of its opinion, the Court said:

"In going on strike the claimants, in a sense, took the position that because their employer was guilty of unfair practices

they were justified in refusing to perform the duties of their employment and, in prosecuting their complaints, that, although on strike, they were entitled to their wages. In this they were upheld and the award of their 'back pay' can, I think, only be held to have been compensation to them for the time which, but for the strike, they would have been employed in the usual sense of the word."

The Court held that the employees were, in legal effect, employed during the time while they were on strike, although they justifiably refrained from performing their work because of unfair labor practices.

In the case of *Meyers v. Director of Employment Security,* 341 Mass. 79, 167 N.E.2d 160 (1960), the Supreme Judicial Court of Massachusetts reached the same result on facts almost identical to those of the present cases. There an employee had been awarded back pay and had been ordered to be reinstated, by an award of an arbitrator under a collective bargaining agreement. The award in that case, as in the instant cases, directed that the employee "should be made whole" but deducted from the award were any amounts which he had received from unemployment compensation during the period involved.

The Division of Unemployment Security redetermined the eligibility of the employee, and found that he was not entitled, as an original matter, to unemployment benefits, in view of the back-pay award. The Division sought reimbursement, which was allowed in the administrative proceedings and in the lower court. Affirming, the Supreme Judicial Court of Massachusetts held that the employee could not have been considered to be in "total unemployment" because of the back-pay award, despite the fact that the back-pay award did not include the compensation benefits. The Court said:

"It is clear from the language used by the arbitrator that the award was to make the petitioner whole for the wages he lost from November 8, 1957, to March 12, 1958. It appears that the award only gave the petitioner his back pay less the amount he received from unemployment benefits. This award, however, is not binding upon us or upon the director of the division. The Supreme Court of the United States has stated that the matter of recoupment by the State for unemployment benefits is a matter between the State and the employee. *National Labor Relations Board v. Gullett Gin Co.,* 340 U.S. 361, 365, 71 S.Ct. 337, 95 L.Ed. 337." 167 N.E.2d at 162.

The Court further stated:

"The purpose of the arbitration proceedings was to reimburse the employee for any loss of wages caused by the wrongful act of the employer. An award of back pay in these circumstances was not a fine, penalty or damages as contended by Meyers. We think rather that it was remuneration from the employer for wages. . . .

"We think that the decision of the board, that the payment of unemployment benefits during the waiting period was not proper, was correct and that payment of benefits for the waiting period was properly a matter for redetermination. . . .

"We do not have before us the issue whether, in view of our decision, Meyers is entitled to further payment of wages under the arbitration award." 167 N.E.2d at 162–163.

To the same effect is the case of *Texas Employment Commission v. Busby,* 457 S.W.2d 170 (Tex.Civ.App.1970).

In that case also a discharged employee was ordered to be reinstated with back pay, pursuant to arbitration under a collective bargaining agreement. Reversing a decision of the trial court, and reinstating a decision of the Texas Employment Commission, the Court of Civil Appeals held that the back pay constituted "wages" under the Texas Unemployment Compensation Act, which defined wages in phraseology identi-

cal to that contained in the Tennessee statute.

In that case, also, the arbitrator's award required that there be deducted from the back pay all amounts received by the employee from other employment and unemployment compensation during the period of her wrongful discharge. As in the Massachusetts case, this was not considered to be a bar to the right of the Texas Employment Commission to obtain reimbursement for the unemployment benefits originally awarded.

Consistent with the foregoing, although presenting the question in a different context, is the case of *In re Tonra*, 258 App. Div. 835, 15 N.Y.S.2d 755 (1939), appeal denied, 258 App.Div. 1002, 17 N.Y.S.2d 858 (1940), affirmed *sub nom. Tonra v. Robins Dry Dock and Repair Co.*, 283 N.Y. 676, 28 N.E.2d 402 (1940).

In that case pursuant to a stipulation of the parties, all claims of an employee for back wages covering the period following a labor dispute were settled. It was held that all moneys paid by the employer under the settlement were "wages" as defined in the state Unemployment Insurance Law and were properly added to the wages of the employee, affecting his base for benefits. To the same effect, involving payments made under a National Labor Relations Board order, back pay was held to constitute remuneration and wages under the state law. *McCoy v. Remington Rand, Inc.* 262 App.Div. 790, 27 N.Y.S.2d 298 (1941), reargument denied, 262 App.Div. 976, 30 N.Y.S.2d 111 (1941), appeal denied, 286 N.Y. 733, 37 N.E.2d 150 (1941).

In the case of *Salerno v. John Oster Mfg. Co.*, 37 Wis.2d 433, 155 N.W.2d 66 (1967), the issue involved a determination of the weeks of unemployment of the claimant, rather than the actual definition of wages. Although it was held that a back-pay award did not affect the number of weeks in which the employee was actually performing wage-earning services for his employer, in the course of its opinion the Court said:

"It is undisputed that back pay received during a discharge is the equivalent of wages for benefit purposes and that consequently the recipient of the back pay would be ineligible for unemployment compensation." 155 N.W.2d at 69.

The principal authority to the contrary which our research has revealed is the case of *Waters v. State*, 220 Md. 337, 152 A.2d 811 (1959). By a divided decision, the Maryland Court held that the Department of Employment Security had no authority, under the Maryland statutes, to proceed to recover from an employee benefits which had been paid to him, although he had received a back-pay award. In that case, an arbitrator awarded back pay to an employee for the period October 18, 1956 to January 24, 1957. He had already been paid unemployment compensation benefits for that period, and there was no deduction for those benefits in the back-pay award. Proceeding on the theory that it was entitled to be reimbursed either under state statutes or by reason of unjust enrichment, the Department made a redetermination of the eligibility of the employee, found an overpayment, and sought recovery. This was allowed in the administrative proceedings, and in the trial court, but was reversed on appeal by a divided decision. The majority of the Court held that the employee was "unemployed" during the period when he was not actually working, and when he was not actually receiving wages, despite the fact that he later received a back-pay award. The majority also held that under the terms and provisions of the Maryland statute, there was no authority for the state to seek reimbursement, in the absence of a material misrepresentation or nondisclosure of material fact.

It thus appears from our examination of the authorities that the Courts which have examined the question have uniformly, with the exception of the Maryland case, found that an award of back pay is equivalent, both in theory and in fact, to wages earned

by an employee, and that upon receipt thereof, the employee is ineligible for unemployment compensation benefits and may be made to account for them, either by reimbursement or by disallowance of future benefits.

■ We are persuaded that this is the better view, supported both by precedent and reason, and accordingly we hold that under the Tennessee statutes the back pay awarded to the appellees constituted "wages" for the period of their discharge, disentitling them to unemployment compensation benefits. The decision of the Board of Review, based upon our research, had "a reasonable basis in law."

Appellees and the Courts below placed almost exclusive reliance upon the holding of this Court in the case of *Balding v. Tennessee Department of Employment Security*, 212 Tenn. 517, 370 S.W.2d 546 (1963). In that case, this Court held that severance pay, due to employees upon termination of their employment, was not the equivalent of "wages" and did not affect the entitlement of the employees to unemployment compensation benefits. We consider this holding to be entirely sound, and do not depart from it in any sense. Nevertheless, there is a fundamental difference between severance pay, the benefits of which usually accrue to employees by reason of seniority, and back pay, which is awarded, either by arbitration or by administrative action, by reason of wrongful discharge or suspension.

As pointed out by the Board of Review, in its opinion in the instant cases:

"The severance pay in the Balding case was awarded to an employee as a matter of right. The contract between the employer and the employees in the Balding case provided pay to employees meeting certain requirements and became a vested right to the employee when he was discharged through no fault of his own. The Court in that case pointed out that the employees would have received severance pay under their contract even though employed in a new job immediate-ly upon the closing of the plant. The severance pay had no relation to the status of the employee after his dismissal from work. Clearly in our case, back pay related not to the prior performance of duties but only to the question of whether or not the employees were legally discharged. As pointed out in the stipulation in our case, the claimants were ordered reinstated with the employer required to remit back pay to make the employees whole for the economic losses the employees incurred during the illegal discharge."

We believe that this is a sound distinction, and that there is no conflict whatever between the present decision and the *Balding* case.

As stated previously, in the decision of one of the courts below, it was suggested that the Department of Employment Security was not authorized by statute to seek reimbursement from employees of benefits paid, absent a misrepresentation or nondisclosure of a material fact. It is true that T.C.A. § 50–1354, expressly provides for recovery in cases of nondisclosure or misrepresentation, but T.C.A. § 50–1325(B) contains explicit provisions for redetermination of awards and recovery for them in the same manner as is provided for the collection of past-due contributions from employers.

As pointed out by the United States Supreme Court in the case of *National Labor Relations Board v. Gullett Gin Co.*, 340 U.S. 361, 365, 71 S.Ct. 337, 340, 95 L.Ed. 337, 342 (1951):

"We note that some states permit recoupment of benefits paid during a period for which the National Labor Relations Board subsequently awards back pay. E. g., *Re Skutnik*, 268 App.Div. 357, 51 N.Y. S.2d 711. Recoupment in such situations is a matter between the State and the employees."

In the later case of *Nash v. Florida Industrial Commission*, 389 U.S. 235, 88 S.Ct. 362, 19 L.Ed.2d 438 (1967), the Court again

recognized that a state can recoup unemployment compensation payments made during a period covered by a back-pay award.

 We are of the opinion that the Tennessee statutes do authorize and contemplate reimbursement in appropriate cases, and that these are not confined merely to cases of misrepresentation or nondisclosure.

We have dealt with the issues presented here in some detail, not only because of their importance to the parties, but because they can potentially be involved in almost every arbitration and administrative decision. The result we have reached is not greatly different from that obtaining in workmen's compensation cases, where employees may receive compensation awards subject to reimbursement if an ultimate recovery is made from a third party. T.C.A. § 50–914. Arbitrators should take into account, in making back-pay awards, the impact of unemployment compensation benefits previously paid, and the effect of reimbursement which may be called for.

The judgments of the Courts below are reversed and the judgment of the Board of Review is reinstated at the cost of appellees.

FONES, C. J., and COOPER, BROCK and HENRY, JJ., concur.