Brenda J. DePRIEST,
Petitioner-Appellant,

v.

Commissioner Robert J. BIBLE, Tennessee Department of Employment Security and Commissioner Mose Pleasure, Jr., Tennessee Department of Human Services, Defendants-Appellees.

Court of Appeals of Tennessee,
Middle Section.

June 27, 1980.

Certiorari Denied by Supreme Court
Sept. 15, 1980.

Harvel M. Rogers, Jr., Nashville, for petitioner-appellant.

William Leech, Jr., State's Atty. Gen., Donald S. Caulkins, Deputy Atty. Gen., Sam J. McAllester, Jr., and Randall P.B. Harris, Dept. of Employment Sec., Nashville, Louise R. Fontecchio, Associate Gen. Counsel, Dept. of Human Services, Nashville, for defendants-appellees.

## OPINION

SHRIVER, Presiding Judge.

### The Case

This is an appeal from the action of the Tennessee Department of Employment Security in denying unemployment compensation benefits to petitioner Brenda DePriest. Petitioner was employed by the Tennessee Department of Human Services as a secretary, in which capacity she served for approximately ten months when she applied for leave to keep certain holy days of her religion, the Feast of Tabernacles and the Last Great Day, a total of eight days. This request was denied by her employer and, thereafter, her employment was terminated in October, 1978 after she left her job without permission and was absent during the above mentioned holy days. Thereafter, benefits were denied petitioner by the Tennessee Department of Employment Security on the ground that she voluntarily quit her latest employment. She appealed and a hearing was held before an Appeals Referee on December 20, 1978, and, on December 29, 1978, the Appeals Referee sustained the decision of the Department in denying the petitioner unemployment benefits.

On January 5, 1978, Mrs. DePriest appealed to the Board of Review of the Department of Employment Security and a hearing was had on March 22, 1979 which resulted in an affirmance of the decision of the Appeals Referee.

On May 1, 1979, Mrs. DePriest filed her Petition for Certiorari in the Chancery Court, Part I, of Davidson County and the case was heard on June 29, 1979 by Chancellor Ben H. Cantrell and, thereafter, on October 16, 1979, the Chancellor filed his Memorandum Opinion in which he sustained the action of the Department in denying petitioner unemployment compensation benefits and entered a decree on October 19, 1979 implementing the opinion.

### The Issues

The appellant states the issues as being:

(1) Whether or not the action of the State in denying petitioner unemployment compensation is violative of the First and Fourteenth Amendments of the United States Constitution.

(2) Whether or not the action of the State is in violation of Article I, Section 3 of the Tennessee Constitution, which provides that all men have a natural and indefeasible right to worship God according to the dictates of their conscience and that no authority can control or interfere with that right.

(3) Whether or not the action of the State violates Article II, Section 15 of the Constitution of Tennessee which provides that no person shall in time of peace be required to perform any service to the public on any day set apart by his religion as a day of rest.

(4) Whether or not the day of rest referred to in the Constitution applies only to the Sabbath, or Sunday.

(5) Whether under T.C.A. § 50–1324 a person whose employment is terminated because she refuses to work on holy days

of her religion may be deemed in the words of the statute to have "left his [her] most recent work voluntarily without good cause connected with his [her] work."

## Our Conclusions

The record shows that Mrs. DePriest, after her request for leave to keep certain holy days of her religion, voluntarily stayed away from work although, apparently, she did not thereby intend to resign from her job. However, she was terminated from her employment in October, 1978 because of her absence from work.

It appears that Mrs. DePriest had been a member of the World Wide Church of God for six years and had kept these days of rest recognized by her religion during that time. It also appears that the Tennessee Department of Employment Security denied unemployment compensation benefits on the basis of Mrs. DePriest voluntarily leaving her most recent work without good cause connected with her work.

Counsel for appellant states in his brief and argument that Mrs. DePriest's position centers on the unconstitutionality of denying her social welfare benefits because she chose to be a member of a particular religious group and to follow the beliefs of that group in keeping certain days of rest, or holy days as she generally refers to them.

It is to be noted that, generally, when unemployment compensation benefit claimants appear without a lack of work separation notice from their employer, they are asked to make a statement regarding their separation from work at the time of the filing of the initial claim with the Tennessee Department of Employment Security. Such was the procedure in the instant case and, by her own admission, she stated at the time of filing of her claim: "I requested 12 day special leave to observe certain holy days obligatory to my religion." She then went on to say: "My request for special leave was not granted . . . so I was absent without leave. . . ." [Board of Review Exhibit # 2] However, in her testimony be-

fore the Department of Employment Security Appeals Referee she stated:

"In September I requested special leave to keep the Feast of Tabernacles and the Last Great Day, a total of eight days. A week later I was notified that this was denied. I went ahead an observed this thing . . . And when I got back, I had a letter of termination in the mail."

This letter, apparently, was written ten days after the appellant had last appeared for work and as is observed by counsel for appellees, apparently Mrs. DePriest made no effort to actually inform her employer prior to leaving that she would be ignoring the decision not to grant her request for additional special leave and that she would absent herself from work by leaving the State for an extended period of time.

It is to be noted that Commissioner Bass informed her that her irregular attendance record had worked a hardship on staff members and was a determining factor in making his decision to terminate her employment, and he urged her in future employment to advise prospective employers of her religious commitment which would necessitate an unusually large amount of absenteeism.

The appellant's statements corroborate the fact that in no way did she initiate any understanding with her employer at the time she was hired concerning the requirements of her religion that she would be absent from work for an extended period of time to observe days of rest.

In the hearing before the Appeals Referee, the following occurred:

"REFEREE: Well, did you have any understanding with her or anybody else at the time you were initially employed, about taking off on holy days?

CLAIMANT [Petitioner]: No sir. When I was first hired by Human Services, I was aware of the, you know, the annual days you get and the sick days, and that [I] could request special leave, and I just didn't think it was necessary. I thought I would have the days. I didn't know, you know, what was going

to happen." [Board of Review, Exhibit # 15]

As is pointed out by counsel for appellees in their brief and argument, appellant, prior to requesting her employer to grant additional special leave to attend these "days of rest," voluntarily chose to exercise her right as a state employee regarding annual and sick leave and used up at her own choice all of her annual and sick leave days accumulated during her tenure with the State.

The petitioner testified as follows:

"REFEREE: . . . Why didn't you use your annual leave for this purpose?

CLAIMANT: I didn't have any annual leave because it had been used up because of sickness, and also my mother-in-law died in December and I had to take three days when I was working in the state office because. . .

REFEREE: Well, for sickness—of course you can use sick leave. . .

CLAIMANT: Yes. . . . So all the days were used up. So, I asked for special leave." [Board of Review, Exhibits # 14 & 15]

It is to be observed at this point that, actually, petitioner was not employed by the State in December. Her ten months of service were from January to October, 1978.

Apparently, the request of petitioner for special leave was not the first such request. Prior to requesting additional special leave for the "days of rest," appellant had already requested and had been granted three other special leave days as brought out by her supervisor in the testimony before the Referee.

Ms. Schmidt stated:

"Mrs. DePriest requested the leave as already stated. However, as she also stated, she had used quite a bit of leave prior to that time. She had used all of her annual leave and all of her sick leave, and in addition to that, had gone into three plus days into special leave. . ."

It should be noted that her use of sick leave was apparently not because of her own illness but was because of the illness of her daughter and/or her mother-in-law.

It appears that Civil Service Regulation 1120–2–2–.13 entitled "Tenure and Separations," in pertinent part, provides:

". . . Any employee who is absent from duty for more than three consecutive business days without notice to his appointing authority or superior officer of the reason for such absence and without securing permission to be on leave, or who fails to report for duty or to the immediate supervisor or the appointing authority within two business days after the expiration of any authorized leave of absence, shall be considered as having resigned not in good standing, provided there were not existent circumstances over which he had no control."

It is to be noted that under T.C.A. § 50–1325(I), it is provided:

". . . In any judicial proceeding under this section, the findings of the Board of Review as to the facts, if there be any evidence to support the same, shall be conclusive and the jurisdiction of said court shall be confined to questions of law . . ."

In *Bailey v. Tenn. Dept. Emp. Security,* 212 Tenn. 422 (429–430), 370 S.W.2d 492 (1963), it was said:

". . . The statute, T.C.A. Sec. 50–1325(I), makes the decision of the Board of Review as to the facts and inferences to be drawn from the facts the equivalent of a jury verdict. . . If, from the facts in the record, reasonable minds could differ as to the cause of the unemployment, then the decision of the Board is final . . ."

Also see *Duke v. Scott,* 216 Tenn. 391 (397), 392 S.W.2d 809 (1965), where it is said that the Supreme Court, as well as the Chancellor, were bound by the finding where there was material evidence to support it. To like effect is the holding in *Griggs v. Sands,* 526 S.W.2d 441 (443) (Tenn.1975).

We agree with the contention of appellees that in the case at bar there is both warrant in the record and a reasonable basis in law to support the Board of Review's

interpretation of the disqualification statute denying appellant's claim for benefits within the context of the specific circumstances of petitioner's separation from work.

In T.C.A. § 50–1324, concerning disqualification for benefits, it is provided an individual can be disqualified for benefits:

"A. If the commissioner finds that he has left his most recent work *voluntarily without good cause connected with his work.* . . ." [Emphasis supplied]

In *Wallace v. Stewart,* 559 S.W.2d 647 (649) (Tenn.1977), the Supreme Court, speaking through Mr. Justice Fones, held that excessive absenteeism can be a basis for denial of unemployment benefits. The Court stated:

". . . No aspect of contract of employment is more basic than the right of the employer to expect employees will appear for work on the day and at the hour agreed upon."

On the Commissioner's appeal in *Thach v. Scott,* 219 Tenn. 390, 410 S.W.2d 173 (176) (Tenn.1966), the Court was of the opinion that the Chancellor was in error in reversing the action of the Board of Review and the Court, speaking through Mr. Justice Harbison, stated:

". . . Unemployment compensation is not necessarily health insurance. In several states 'good cause' for quitting must be attributable to the employer or arise in connection with the work before the employee is said to be taken out of the category of having voluntarily quit. The Tennessee statute contains such a limitation, and the individual is disqualified if he leaves voluntarily without good cause connected with his work under the express terms of T.C.A. § 50–1324, subd. A. . . ."

In *Aladdin Industries, Inc. v. Scott,* 219 Tenn. 71 (78), 407 S.W.2d 161 (1966), in reversing a decree of the Chancellor who affirmed the decision of the Board of Review to award benefits to an employee who claimed it was not a suitable offer of work and refused to accept a transfer, the Court said:

". . . To uphold the decision of the Board of Review would be placing in the hands of the employee the right to determine when and under what conditions she would work. Such a holding would unduly restrict the employer and could conceivably, under certain circumstances, make it almost impossible to carry on a business during certain hours. . . ."

Counsel for appellant relies heavily on the case of *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), which involves the denial by the State of South Carolina of unemployment compensation benefits to Mrs. Sherbert who had been discharged from employment for refusing to work on Saturday, she being a member of the Seventh Day Adventist Church. South Carolina denied unemployment compensation benefits on the basis that this refusal to accept work, even under these circumstances, violated the requirement of the South Carolina statute which is somewhat similar to the Tennessee statutes in that it provides that to be eligible for benefits a claimant must be able to work and available for work and, further, that claimant is ineligible for benefits where he has failed without good cause to accept available suitable work when offered.

While *Sherbert v. Verner* may plausibly be insisted upon as authority for petitioner's position in the case at bar, we think there are several distinguishing features which render the *Sherbert* case inapplicable as binding authority in the case at bar.

In *Sherbert,* the Court, speaking through Mr. Justice Brennen, expressly held:

". . . Nor do we, by our decision today, declare the existence of a constitutional right to unemployment benefits on the part of all persons whose religious convictions are the cause of their unemployment. . . Our holding today is only that South Carolina may not constitutionally apply the eligibility provisions so as to constrain a worker to abandon his religious convictions respecting the day of rest. . . ."

As is pointed out by counsel for appellees, Mrs. Sherbert's situation was different from that of petitioner DePriest in that the United States Supreme Court reversed in Sherbert not because the denial of unemployment benefits under the circumstances of her own creation surrounding her separation from her last employment, but because she was denied benefits in South Carolina because she would not accept new employment that would require her to be available for Saturday work, she being a Seventh Day Adventist, and South Carolina did not find that Mrs. Sherbert was separated from her last job but voluntarily left without a work connected cause. It did find that her own restriction upon her availability for Saturday work brought her within the provision of their law disallowing benefits to workers who fail to accept suitable work when offered.

In the case at bar, appellant's disqualification for benefits was based upon the circumstances of her own creation that surrounded her separation from work she had already accepted, and it did not force her to abandon one of the precepts of her religion as a pre-condition to eligibility.

It is to be noted that appellant's disqualification does not derive solely from the practice of her religion. Mrs. DePriest had already chosen to accept employment at a time when she was aware of the provisions for annual, sick and special leave, and she did not seek any understanding with her employer at the time of her employment regarding her need for leave on special days of rest, and, furthermore she chose to use up all of her accumulated annual and sick leave as well as three additional days of special leave before she decided unilaterally to leave her job behind in order to attend her days of rest in another state and she left without any notification to her employer that she would be absent.

The Supreme Court of the United States has recently denied certiorari and let stand a California Supreme Court decision denying unemployment compensation benefits under an equivalent statute to that involved here.

In *Hildebrand v. Unemployment Ins. Appeals Bd.,* 19 Cal.3d 765, 140 Cal.Rptr. 151, 566 P.2d 1297 (1299), cert. denied 434 U.S. 1068, 98 S.Ct. 1247, 55 L.Ed.2d 770 (1978), the Board's denial of benefits was upheld on the ground that Mrs. Hildebrand left her last employment voluntarily without good cause and her former employer had replaced her because she failed to report for Saturday work due to her religious beliefs. Justice Richardson cited *Trans World Airlines v. Hardison,* 432 U.S. 63, 66, 97 S.Ct. 2264, 2268, 53 L.Ed.2d 113 (120) (1977), and distinguished *Sherbert* as follows:

. . . "*Sherbert* is distinguishable from the present case. In *Sherbert* the high court examined the circumstances under which a prospective employee refused without good cause 'to accept available suitable work.' Although California imposes a similar 'suitable work' requirement upon claimants (§ 1257), the legality of that statute is not before us. Instead, measuring the constitutionality of Section 1256, we must determine whether plaintiff, having initially accepted employment, thereafter left work 'voluntarily without good cause.' The public policy underlying section 1256 has been recognized both statutorily and judicially. By denying unemployment benefits to one who has voluntarily terminated employment without good cause, the state promotes a valid purpose in assuring that unemployment benefits are reserved 'for persons unemployed through no fault of their own, and to reduce involuntary unemployment and the suffering caused thereby to a minimum.' (§ 100; see *Zorrero v. Unemployment Ins. Appeals Bd.,* (1975) 47 Cal.App.2d 434, 439, 120 Cal.Rptr. 855, 858)"

For reasons indicated, the judgment of the Chancellor is affirmed.

AFFIRMED.

TODD, J., and McCANLESS, Special Judge, concur.