LULA MAE CAWTHRON, Appellant,

*v.*

MRS. C. FRANK SCOTT, Commissioner, Tennessee
Department of Employment Security, et al.,
Appellees.

FLORA WEST, Appellant,

*v.*

MRS. C. FRANK SCOTT, Commissioner, Tennessee
Department of Employment Security, et al.,
Appellees.

400 S.W.2d 240.

(*Nashville,* December Term, 1965.)

Opinion filed February 25, 1966.

Carney & Dennis, Shelbyville, for appellants.

W. L. Moore, W. D. Dodson, and Gullett, Steele & Sanford, Nashville, for appellees.

Mr. Justice Chattin delivered the opinion of the Court.

The appeals in the above two styled cases present the same question for our consideration.

Mrs. Lula Mae Cawthron was an employee of the Bradley-Sun Division, American Can Company, of Shelbyville, Tennessee, from October 11, 1962, until September 1963, at which time she underwent an operation on her gall bladder. Prior to her operation she worked the third shift, or from eleven P.M., until seven A.M.

Due to her operation she was off from work for eight weeks. Two weeks after she returned to her work she requested her employer to transfer her from the third shift to a day shift. Her employer was unable to transfer her to another shift. She continued to work until January 10, 1964, at which time she quit her work upon the advice of her doctor.

The record shows Mrs. Cawthron suffered from nervous tension before and after the operation and could not sleep during the day. For this reason, her doctor had advised her to quit work unless her employer would transfer her to another shift. There were no vacancies on the first and second shifts; and, consequently, her employer could not transfer her.

Mrs. West was employed by the Pencil Printing and Distributing Company, Inc., of Shelbyville, Tennessee, from January 14, 1963, until August 1963, when she fell while walking on a street and injured her right wrist.

Because of her injury she was off from her work from August to December 1963, at which time she returned to her work and worked until February 18, 1964. She quit work on that day because the performance of her work caused her to suffer severe pain in her injured wrist. Her work required constant movement of her right wrist.

Her doctor stated that her injury was such as to necessitate her to quit her usual work, but she could do other work.

She applied to her employer for other work, but was told there was no other job vacant at the time.

Both Mrs. Cawthron and Mrs. West filed claims for unemployment compensation. The Appeals Referee of the Unemployment Compensation Division, Department of Employment Security, denied both claims. Both appealed to the Board of Review. After a hearing, the Board found both claimants had voluntarily quit their jobs without cause connected with their work and affirmed the action of the Appeals Referee in denying their claims.

Each claimant then filed a petition for certiorari in the Chancery Court. The Chancellor reviewed the records of the Board and found the Board was justified in finding neither of the complainants had brought herself within the exception to the disqualifying provision of T.C.A. Section 50-1324, subd. A. The Chancellor dismissed both petitions for certiorari and granted both petitioners an appeal to this Court.

It is contended by the appellants the Chancellor and the Board of Review erred in ruling that T.C.A. Section 50-1324, subd. A is applicable to the facts as found in each of the cases. That Section of T.C.A. provides:

"Disqualification for benefits.—An individual shall be disqualified for benefits:

"A. If the commissioner finds that he has left his most recent work voluntarily without good cause connected with his work, such disqualification shall be for the duration of the ensuing period of unemployment and until he has secured subsequent employment

covered by an unemployment compensation law of this state, or another state, or of the United States, and earned thereby five (5) times his weekly benefit amount. No disqualification shall be made hereunder, however, if such individual presents evidence supported by competent medical proof that he was forced to leave his most recent work because he was sick or disabled and notified his employer of that fact as soon as it was reasonably practical to do so, and returned to that employer and offered himself for work as soon as he was again able to work, and to perform his former duties. Neither shall this disqualification apply to an individual who left his work in good faith to join the armed forces of the United States."

Appellants insist this Code Section only applies if the Commissioner finds that the employee quit his most recent work voluntarily; and that the facts in each of the records under consideration show that both complainants involuntarily left their employment because of illness or disability upon the advice of their physicians.

In 48 Am.Jur., Social Security, Unemployment Insurance, etc., Section 35, at page 71 (Supp. 1965) it is said:

"The courts are not in agreement as to whether leaving employment because of illness or disability constitutes voluntary or involuntary quitting. Some cases hold that illness or disability may be so impelling as to cause the leaving to be involuntary. Other courts infer that, because the purpose of the unemployment compensation laws is to stabilize employment and protect against involuntary employment, to constitute an involuntary leaving, the employment must be, in effect, terminated by the employer. Occasionally, the

theory has been expressed to allow benefits where illness or disability is present would convert unemployment compensation to health insurance. Other courts have stated, however, that the other requirements, contained in all unemployment compensation laws, with which the individual must comply before receiving benefits, afford sufficient safeguards. The principal difference in the statutes affecting this question appears to be that in some states, no limitation is placed on 'good cause' for quitting, whereas, in other jurisdictions the 'good cause' must be attributable to the employer or arise in connection with the work. Where the limitation that the good cause for quitting must be 'connected with the work or attributable to the employment' is not found in the statute it frequently has been held that reasonable or sufficient personal reasons, such as illness or physical disability, may constitute good cause for terminating the employment. It will be noted that, unless the statute expressly so provides, it is not necessary that the employer be negligent or at fault in any way to support a finding that the cause for leaving is attributable to the employer or employment. These statutes only contemplate that the 'good cause' shall arise out of the job itself, or because of it, regardless of any fault of the employer.''

■ The disqualifying provision of the statute under consideration is that a claimant will be eligible for unemployment insurance unless, ''he has left his most recent work voluntarily without cause connected with his work.'' We think it is reasonable to say this means that the connection with employment must be one of cause and effect in cases of illness or disability. That is to say, a causal connection between the employment and the illness or disability is required.

In the records under consideration there is no connection shown between the illness or disability of the claimants and their work. Mrs. Cawthron underwent a gall bladder operation. Prior to and after the operation she was nervous and unable to sleep during the day. Petitioner Mrs. West, suffered the injury to her wrist while off from work.

To sustain the Board of Review's application of the provision in the statute under consideration, "we need not find that its construction is the only reasonable one or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings. The 'reviewing court's function is limited'. All that is needed to support the commission's interpretation is that it has 'warrant in the record' and a 'reasonable basis in law'." *Milne Chair Company v. Hake,* 190 Tenn. 395, 230 S.W.2d 393 (1950); *Moore v. Commissioner of Employment Security,* 197 Tenn. 444, 273 S.W.2d 703 (1954); *Aluminum Company of America v. Walker,* 207 Tenn. 417, 340 S.W.2d 898 (1960).

It was the duty of the Chancellor to review the records of the proceedings before the Board of Review and to determine whether there was any evidence in the records to sustain the Board's findings of fact, and if there was, it was then the Chancellor's duty to apply the applicable law to those findings.

In view of what we have said hereinabove, it is necessary the decrees of the Chancellor dismissing the petitions for certiorari be affirmed.

BURNETT, CHIEF JUSTICE, and WHITE, DYER and CRESON, JUSTICES, concur.