NATHAN R. THACH, SR., Appellee,

*v.*

MRS. C. FRANK SCOTT, Commissioner, Tennessee Department of Employment Security, Appellant.

410 S.W.2d 173.

(*Knoxville,* September Term, 1966.)

Opinion filed December 9, 1966.

W. L. MOORE and W. D. DODSON, Nashville, for appellant.

RAY SIENER, Chattanooga, for appellee.

MR. SPECIAL JUSTICE WILLIAM J. HARBISON delivered the opinion of the Court.

In this case the Commissioner of Employment Security has appealed from a decree of the Chancery Court of Hamilton County, Tennessee, awarding unemployment compensation benefits. The Board of Review of the Department had denied benefits, finding the applicant disqualified under T.C.A. sec. 50-1324, subd. A, but on certiorari the chancellor reversed.

The facts of the case are not in dispute. The applicant, Nathan R. Thach, Sr., had worked for Ayers Motor Company in Chattanooga, Tennessee, from 1953 until September 23, 1964. In his original application for unemployment compensation benefits the claimant filed a statement to the effect that he had a double curvature of his spine and was not able to lift heavy equipment. He said that the service manager of the Motor Company for which he worked had promised to get a hoist to lift heavy objects, but that none had ever been bought. On the last day of his work he was asked to do a job involving lifting a motor over a fender. He said that he was not able to do this and that he was discharged. The separation notice from his employer and the records of the Department of Employment Security show that the claimant was discharged for failure to follow instructions. Initially the Agency denied the claim in this case upon the basis of misconduct connected with the work. The claimant appealed, however, and the Appeals Referee affirmed, holding that the claimant was guilty of misconduct within the meaning of the statute, T.C.A. sec. 50-1324, subd. B(2). The claimant appealed to the Board of Review of the Department, which held a hearing, and by a decision, dated March 17, 1965, the Board of Review modified the decision of the Appeals Referee and held that the claimant had voluntarily quit his job with the Ayers Motor Company, rather than being discharged for misconduct. The Board held that he had not met any of the exceptions to voluntarily quitting without good cause connected with his work, and that he was disqualified under the provisions of T.C.A. sec. 50-1324, subd. A.

Following this decision the claimant sought a rehearing and requested permission to introduce medical proof.

This was granted, and at the rehearing a letter was introduced from an orthopedic physician who had examined and treated the claimant. Following this rehearing, and consideration of the doctor's letter, the Board of Review issued a new decision, dated June 9, 1965, in which it found that the claimant had not recovered from a disability which the doctor described, to the extent that he had returned to his employer and offered himself as being able to work and perform his former duties. The Board, therefore, sustained its former decision holding that the claimant had voluntarily quit his work without good cause connected with the work and was, therefore, disqualified.

Upon certiorari, the chancellor found that the claimant did not voluntarily quit his most recent employment, but "was forced to do so due to physical disability." The chancellor disagreed with the construction placed by the Board upon T.C.A. sec. 50-1324, subd. A. He held that section had no application to permanent disability, but that it referred only to a situation where an employee was temporarily disabled and thereafter recovered and re-offered himself for employment with his former employer. The chancellor held that the disqualification referred to in the statute had no application in case of a permanent disability which rendered it impossible for the employee to continue the work which he was doing, but left him capable of performing other work which he was ready, willing and able to do.

The statute in question, T.C.A. sec. 50-1324, subd. A, is as follows:

A. If the commissioner finds that he has left his most recent work voluntarily without good cause connected

with his work, such disqualification shall be for the duration of the ensuing period of unemployment and until he had secured subsequent employment covered by an unemployment compensation law of this state, or another state, or of the United States, and earned thereby five (5) times his weekly benefit amount. No disqualification shall be made hereunder, however, if such individual presents evidence supported by competent medical proof that he was forced to leave his most recent work because he was sick or disabled and notified his employer of that fact as soon as it was reasonably practical to do so, and returned to that employer and offered himself for work as soon as he was again able to work, and to perform his former duties. Neither shall this disqualification apply to an individual who left his work in good faith to join the armed forces of the United States.

There is no question in the record in the present case but that the applicant felt that he was physically unable at the time to perform the work assigned to him and that accordingly his employment was terminated for that reason. It is not claimed that his disability was in any way attributable to his employment or connected with his work. His doctor wrote a letter stating that the claimant had had a curvature of his spine since his high school days, and the doctor found that at the time of his last examination of the claimant on February 15, 1965, claimant had a permanent partial disability of 15% to 20% of the body as a whole secondary to his back pathology.

The claimant, as stated, had worked for his employer, Ayers Motor Company, for about eleven years. The record shows that he was employed as a mechanic, and he

testified that he had done work in some seven categories of the types of work done in the shop. There was evidence that he was ready, willing and able to continue to perform work in six of these categories at the time of the termination of his employment, but that he was not physically able to perform motor overhaul requiring heavy lifting, the seventh category, by reason of the permanent partial disability of his back above referred to. As stated, there was no contention that this physical impairment was in any way brought about or aggravated by the employment.

It is the insistence of the Commissioner on this appeal that the chancellor was in error in his construction of T.C.A. sec. 50-1324, subd. A. It is the insistence of the Commissioner that the employee voluntarily quit without good cause connected with his work. Further, it is the insistence of the Commissioner that there has been no compliance by the claimant with the provisions of T.C.A. sec. 50-1324, subd. A that the employee, if forced to leave work because of illness or disability, must, as soon as reasonably practical, return to the employer and offer himself for work as soon as he is again able to work, and to perform his former duties.

The construction of T.C.A. sec. 50-1324, subd. A in connection with cases of permanent partial disability was before this Court very recently in the case of *Cawthron v. Scott,* 217 Tenn. 668, 400 S.W.2d 240 (1966). In that case, the claimant had worked for her employer for some eleven months, prior to undergoing an operation. Prior to her operation she had worked on the night shift. Following her operation she was off from work for about eight weeks. Thereafter she returned to work and re-

quested her employer to shift her from the night shift to the day shift. The employer was unable to transfer her to this shift, and claimant thereupon continued to try to work the night shift until she quit upon the advice of her doctor. The record showed that she suffered from nervous tension before and after her operation and could not sleep during the day. It was under these conditions that her doctor had advised her to transfer to another shift. There being no vacancy in the day shift, the employer was unable to transfer her. It appeared that she was able to do the work from a physical standpoint, but because of nervous tension and lack of sleep she was unable to continue to perform her duties at night.

At the same time the Court decided the *Cawthron* case, it also decided a companion case involving a claimant who had fallen while walking on a street and injured her right wrist. She was off from work some four months following the injury and thereafter she returned to her work and worked for about three months. She quit work finally on February 18, 1964, because the performance of her work caused her to suffer severe pain in her injured wrist. Her work required constant movement of her wrist. Her doctor stated that her injury was such as to necessitate that she quit her usual work, but she could do other work.

In both of these cases, the Department denied benefits under T.C.A. sec. 50-1324, subd. A, and the chancellor, on certiorari, sustained the action of the Department. This Court affirmed the action of the chancellor in each case and held that where there was a permanent disability which was not caused by the employment, the termination of the employment by reason of such dis-

ability would be deemed voluntary. This Court approved the construction of the statute given by the Department, pointing out that in order to sustain its application of the provisions of the statute in question, the Department's construction need not be the only reasonable one or the only result that could have been reached had the question arisen in the first instance in judicial proceedings.

■■ We are of the opinion that the present case is controlled by the decision in the *Cawthron* case, and its companion case *(West v. Scott),* decided at the same time and discussed in the same opinion. In the *Cawthron* case the Court recognized that in the various states the unemployment compensation statutes differ in their provisions and recognized that there is authority to the effect that illness or disability may be deemed to be so impelling as to cause the leaving to be involuntary. The Court recognized that the problem is primarily one of statutory construction. Unemployment compensation is not necessarily health insurance. In several states "good cause" for quitting must be attributable to the employer or arise in connection with the work before the employee is said to be taken out of the category of having voluntarily quit. The Tennessee statute contains such a limitation, and the individual is disqualified if he leaves voluntarily without good cause connected with his work under the express terms of T.C.A. sec. 50-1324, subd. A. In the *Cawthron* case the Court held that there must be a showing of a causal connection between the disability or illness and the work in order for the termination to be deemed involuntary.

It is argued on behalf of the appellee that the *Cawthron* case is distinguishable on the ground that the claim-

ant involved there was not able to perform any of her normal duties. That was true in the *West* case, decided with the *Cawthron* case. In the *Cawthron* case itself the claimant was able to perform all of her duties, but simply sought to be transferred to another shift for reasons of health. In the present case the claimant is able to perform a part of his normal duties, but not all of them, because of a physical impairment which was not caused by or aggravated by his employment. We do not deem this to be a sufficient distinction to justify a different result from that reached in the *Cawthron* case.

In another case, *Guffey v. Scott,* 217 Tenn. 707, 400 S.W.2d 705 (1966), this Court sustained an interpretation of T.C.A. sec. 50-1324, subd. A consistent with that made by the Department in the present case. There the claimant had been employed for nearly nine years prior to termination of her employment by reason of pregnancy. Her work terminated on March 23, 1964, and she was released to return to work by her doctor on May 1, 1964. She did not, however, make application for re-employment until June 23, 1964. At that time there was no opening available for her, and accordingly she filed her claim for unemployment compensation benefits. The claim was denied upon the ground that she had left work voluntarily without good cause connected with her work within the meaning of the statute. The Appeals Referee sustained the action of the Agency in rejecting the claim, the Board of Review affirmed, and upon certiorari the chancellor affirmed. This Court also affirmed on appeal. The chancellor found that the Board of Review was justified in holding that the claimant had voluntarily left her employment without good cause connected with her work, by reason of her pregnancy. The chancellor further

held that the claimant did not return to her employer and offer herself for work as soon as she was able to work and perform her former duties following the birth of her child. Accordingly, she was held to have voluntarily quit her work and she had failed to remove herself from her disqualified status by promptly seeking re-employment.

Of course, the *Guffey* case did not involve permanent disability, but only a temporary disability. The present case does involve a permanent disability, as did the *Cawthron* case.

We are of the opinion that the chancellor was in error in reversing the action of the Board of Review. The assignments of error are sustained, and the judgment of the chancellor is reversed. The cause is dismissed at the cost of appellant.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.