| DORIS M. DARDEN, | ) | |
|---|---|---|
| | ) | |
| Petitioner/Appellant, | ) | |
| | ) | Davidson Chancery |
| | ) | No. 95-417-III |
| VS. | ) | |
| | ) | Appeal No. |
| | ) | 01A01-9610-CH-00458 |
| ALVIN C. YORK, MEDICAL CENTER, | ) | |
| and BILLY J. STOKES, Commissioner of the | ) | |
| Tennessee Department of Employment Security, | ) | |
| | ) | |
| Respondents/Appellees. | ) | |

**FILED**

April 23, 1997

Cecil W. Crowson
Appellate Court Clerk

### IN THE COURT OF APPEALS OF TENNESSEE
### MIDDLE SECTION AT NASHVILLE


### APPEAL FROM THE DAVIDSON CHANCERY COURT
### AT NASHVILLE, TENNESSEE


### HONORABLE ROBERT S. BRANDT, CHANCELLOR


Doris M. Darden
3226 Masonwood Drive
Nashville, TN 37207
ATTORNEY FOR PLAINTIFF/APPELLANT


Jeffrey E. Wilson
500 James Robertson Parkway
12th Floor
Nashville, TN 37245-0100
ATTORNEY FOR DEFENDANT/APPELLEE


### AFFIRMED AND REMANDED


HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION


CONCURS:
BEN H. CANTRELL, JUDGE


CONCURS IN SEPARATE OPINION:
WILLIAM C. KOCH, JR., JUDGE

DORIS M. DARDEN, )
 )
  Petitioner/Appellant, )
 )  **Davidson Chancery**
 )  **No. 95-417-III**
VS. )
 )  **Appeal No.**
 )  **01A01-9610-CH-00458**
ALVIN C. YORK, MEDICAL CENTER, )
and BILLY J. STOKES, Commissioner of the )
Tennessee Department of Employment Security, )
 )
  Respondents/Appellees. )

# O P I N I O N

The petitioner, Doris M. Darden, has appealed from the non-jury judgment of the Trial Court dismissing her petition for certiorari, and affirming the decision of the Board of Review denying petitioner's claim for unemployment benefits.

The claim was denied by the Board upon the following findings of fact and conclusions of law:

> FINDINGS OF FACT: Claimant's most recent employment prior to filing this claim was for the VA Medical Center, Murfreesboro, TN from October 13, 1989 until February 8, 1994 when she voluntarily resigned. The claimant quit her employment because of stress and depression. She made doctor's appointments in Nashville for 2:00 p.m. on two separate days. The claimant and her supervisor disagreed about how much sick leave time the claimant could take for the appointments. The claimant wanted to take all day and the supervisor wanted her to take one-half day of sick leave, and if she wished to be absent all day, to take the remaining hours as annual leave. This conformed with the employer's policy and with normal practice. The claimant felt stressed and harassed about this and filed an EEO complaint against her supervisor and against several other employees. When she began to give information about her complaint to the employer's EEO officer, the claimant began sobbing loudly, said that she couldn't take it any more, and threw herself against walls and windows. A staff psychiatrist sedated her and referred her to her own psychiatrist as soon as possible. The claimant's own psychiatrist, after consultation with the claimant and her husband about the claimant's work, health, and the family financial condition, recommended that the claimant not continue her employment. The psychiatrist diagnosed the claimant as suffering from stress and depression, and, based on his conversations with he claimant, said that her work was possibly a factor. Claimant then submitted a resignation.

CONCLUSIONS OF LAW: After carefully considering the entire record in this case, the Board of Review finds that this claim for benefits should be denied under TCA § 50-7-303(a)(1). We find that the claimant left her employment voluntarily and without good cause connected with work. She quit her employment on the advice of her psychiatrist because of stress and depression. While, as noted by her psychiatrist, work may have been a factor, the stress from work appears only to have been an aggravating factor rather than the primary cause of the claimant's condition. The claimant was very upset because her supervisor would only allow her one-half day of sick leave for a doctor's appointment at 2:00 p.m., and if the claimant wanted to take the entire day, was going to require her to take the remainder as annual leave. In our opinion, it was not unreasonable for the supervisor to require the claimant to do this. If the claimant had to quit employment because of such situations, the problem appears to have been more within the claimant than it was connected with work. We note that the employer was in the process of taking information from the claimant in order to investigate her complaints against the employer when the claimant became so agitated that she required sedation and attention from a psychiatrist. This was a good faith effort by the employer to address the claimant's concerns.

The memorandum of the Trial Judge states:

The petitioner worked at the VA Medical Center from October 13, 1989 until February 8, 1994, when she voluntarily resigned upon her doctor's advice. Ms. Darden quit her job due to depression brought on by job-related stress.

The petitioner had a history of problems with her employer regarding what she felt to be harassment and discrimination by different employees at the hospital. As the result of an agreement with her employer regarding the prior problems, Ms. Darden was assigned to a different department, the library, with a new supervisor.

At about the same time that she was transferred, the petitioner's doctor notified Ms. Darden that she was suffering from depression resulting from job-related stress. Her doctor prescribed an anti-depressant medicine and scheduled an appointment for psychiatric counseling.

She and her new supervisor then had a dispute about how much sick time she could take on the days she had doctor's appointments. They had several disagreements about this, and Ms. Darden testified that she felt her supervisor refused to let her keep her appointments on two occasions.

The petitioner had notified her EEO officer about her problem getting time off for doctor's appointments and she met with the officer on January 27, 1994. About ten minutes into this meeting, the petitioner had a so-called "nervous breakdown," hammering the windowpanes with her hands and slamming herself into the walls, shrieking "I can't take it anymore" and sobbing loudly. An emergency medical alert was called and a staff psychiatrist at the Medical Center gave Ms. Darden medication to calm her. Her husband then took her home.

The petitioner saw her own doctor on January 28 and he diagnosed that she suffered from manic-depressive syndrome. He advised that her breakdown and prior illness were job-related and that she needed to leave her job to recover. The petitioner then faxed a resignation letter to her supervisor on February 8, 1994.

Since Ms. Darden did voluntarily resign, the only issue in this case is whether the petitioner quit her job for "good cause connected to work." Tenn. Code Ann. § 50-7-303(a)(1). Since the term "good cause connected to work" is nowhere defined in the statute, the Court must look to case law to determine its meaning. In *Cawthron v. Scott*, 400 S.W.2d 240 (Tenn. 1966), the Tennessee Supreme Court interpreted "good cause connected to work" in a situation such as this to mean, "that the connection with the employment must be one of cause and effect in cases of illness and disability. That is to say, a causal connection between the employment and the illness ... is required." Supreme Court held that a woman who had a preexisting bronchial condition which was aggravated by air-conditioning at work was not entitled to unemployment benefits. The petitioner in that case, like Ms. Darden, quit her job on the advice of her doctor. The Court in Cooper specifically found that, "[t]he fact that the air-conditioning in her office aggravated the preexisting bronchial condition is not a cause which can be laid to her employment. 429 S.W.2d at 427.

This Court's review is limited to the record and the Board's decision may not be reversed if it is supported "by evidence which is both substantial and material in light of the entire record." Tenn. Code Ann. § 50-7-304(I)(2)(E) (1995 Supp.). However, the determination of whether the employee left their employment *with* or *without* good cause is a question of law. *Cooper* at 426.

Unfortunately for the petitioner, her situation is almost identical to that in the *Cooper* case. The petitioner suffered from a preexisting illness, manic-depressive syndrome, which was aggravated by stress at work. There is no evidence in the record that the petitioner's job *caused* the manic-depressive syndrome. Therefore, she does not meet the test set out in *Cawthron* and *Cooper* to come within the meaning of "good cause connected to work."

For this reason, the decision of the Board must be affirmed.

On appeal, petitioner presents the following issue:

Did the Court err in its finding that the Petitioner voluntarily left her employment without good cause.

The above quotations indicate that both the Board and the Trial Court found against the petitioner because a preexisting condition (manic depression) was aggravated by job stress.

-4-

Petitioner's physician did indicate underlying manic depression, but did not indicate that its origin predated petitioner's employment which began in 1989.

The applicable statute, TCA § 50-7-303(a)(1) reads as follows:

> **Disqualification for benefits**, - (a) Disqualifying Events. A claimant shall be disqualified for benefits.
>
> (1) If the commissioner finds that the claimant has left such claimant's most recent work voluntarily without good cause connected with such claimant's work. Such disqualification shall be for the duration of the ensuing period of unemployment and until such claimant has secured subsequent employment covered by an unemployment compensation law of this state, or another state, or of the United States, and was paid wages thereby ten (10) times such claimant's weekly benefit amount. No disqualification shall be made hereunder, however, if such claimant presents evidence supported by competent medical proof that such claimant was forced to leave such claimant's most recent work because such claimant was sick or disabled and notified such claimant's employer of that fact as soon as it was reasonably practical to do so, <u>and returned to that employer and offered to work as soon as such claimant was again able to work, and to perform such claimant's former duties</u>. (Emphasis supplied)

It appears that the focal issue before the administrative agency and the Trial Court was whether the employee "left claimant's most recent work -- without good cause connected with claimant's work." Petitioner insisted, and insists to this Court, that she left work involuntarily because of good cause connected with her work, i.e. "job stress." The employer insisted and now insists that the underlying cause was manic depressive syndrome not connected with the employees work and the "job stress" was merely an aggravating factor.

It appears that neither the Board nor the Trial Court considered the portion of the quoted statute which delays entitlement to benefits until the sick or disabled employee has recovered and applied for reinstatement.

*Cawthon v. Scott,* 217 Tenn. 668, 400 S.W.2d 240 (1965) involved two ladies whose claims were consolidated and determined together. One resigned because, after gall bladder surgery, she was unable to sleep because of the hours of her employment. The other resigned

because an injury suffered off the job caused her work to be painful.  The Supreme Court affirmed the denial of unemployment benefits and said:

> The disqualifying provision of the statute under consideration is that a claimant will be eligible for unemployment insurance unless, "he has left his most recent work voluntarily without cause connected with his work."  We think it is reasonable to say this means that the connection with employment must be one of cause and effect in cases of illness or disability.  That is to say, a causal connection between the employment and the illness or disability is required.
>
> In the records under consideration there is no connection shown between the illness or disability of the claimants and their work. Mrs. Cawthon underwent a gall bladder operation.  Prior to and after the operation she was nervous and unable to sleep during the day.  Petitioner Mrs. West, suffered the injury to her wrist while off from work.

In *Thach v. Scott*, 219 Tenn. 390, 410 S.W.2d 173 (1966), a mechanic was discharged because he was unable to do part of his work due to a congenital double-curvature of the spine. The Supreme Court upheld the denial of unemployment benefits.

In *Guffey v. Scott*, 217 Tenn. 707, 400 S.W.2d 705, (1966), claimant was terminated because of her pregnancy.  The Supreme Court affirmed the denial of unemployment benefits.

In *Cooper v. Burson*, 221 Tenn. 621, 429 S.W.2d 424 (1968), the claimant voluntarily terminated her employment in 1966 because the air conditioning in her work place aggravated a recurring bronchial condition which had afflicted her since 1964.  Her claim was denied by the Board because the claimant had not returned to work as required by the statute.  The Supreme Court affirmed the decision of the Board and said:

> In the present case the facts, as contained in the record, will not sustain a finding that the termination of employment by Mrs. Cooper was either involuntary or was with good cause connected with her work.  The fact that the air conditioning in her office aggravated the preexisting bronchial condition is not a cause which can be laid to her employment.
>
> The statute provides that the employee is entitled to unemployment compensation if he cannot obtain employment from his employer upon prompt reapplication, once the cause of termination is arrested.  This

prompt reapplication prerequisite has been held to be mandatory. *Guffey v. Scott* (1966) 217 Tenn. 707, 400 S.W.2d 705.

In the present case, Mrs. Cooper claims that her disablement is still existing. If this is true, she is not entitled to unemployment compensation at the present time. When she is able to comply with the provisions of the medical exception to sec. 50-1324, subd. A--or when she can otherwise remove the disqualification by obtaining other employment for the period required by sec. 50-1324, subd. her situation would then be mature for reapplication for unemployment compensation in a proper case.

In the present case, the Board and the Trial Court were of the opinion that the "job stress" connected with petitioner's work was an "aggravating cause," but that "manic depression syndrome" the underlying and real cause of departure was pre-existing and unconnected cause as the recurrent bronchial condition in *Cooper v. Burson, supra*.

In Cooper v. Burson, the Supreme Court did assume that a "recurrent bronchial condition" was not a work-induced injury, but the failure to re-apply for employment was also cited as grounds for the decision.

In the present case, petitioner testified:

Ms. Alexis: Now, when was the next time that you visited your psychiatrist, Dr. Baird?

Ms. Darden: February the 2nd of '94.

Ms. Alexis: Now, you have a copy of that medical record also.

Ms. Darden: Yes, I do.

Ms. Alexis: And on that day what diagnosis did the doctor give you again?

Ms. Darden: He said that I was under stress - it was job stress and I was having manic depressive episodes.

Her physician's record reflects:

Problem #1 Manic Depressive Episode
Problem #2 Job Stress

Absent specific evidence on the issue, this Court prefers not to dispose of this appeal upon the assumption that the manic depression syndrome did or did not originate in petitioner's work.

A more satisfactory basis for disposition of the appeal lies in the lack of evidence that petitioner has recovered from her disability and has offered to return to work. As stated in *Cooper v. Burson, supra*, when she is able to comply with the provisions of the statute, her situation would then be mature for reapplication for unemployment compensation. No judgment is made at this time as to her rights in event of such reapplication.

The judgment of the Trial Court is affirmed. Costs of this appeal are taxed against the appellant. The cause is remanded to the Trial Court for further necessary proceedings.

## AFFIRMED AND REMANDED

_____
HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCURS:

_____
BEN H. CANTRELL, JUDGE

CONCURS IN SEPARATE OPINION:

WILLIAM C. KOCH, JR., JUDGE