# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
February 6, 2004 Session

## LINDA G. JOHNSON v. MARK REINEKE, ET AL.

**Appeal from the Chancery Court for Loudon County**
No. 10250     Jerri S. Bryant, Chancellor

**FILED FEBRUARY 25, 2004**

**No. E2003-01972-COA-R3-CV**

---

The Petitioner was discharged from her executive position as Director of the Lenoir City Housing Authority for misconduct connected with her employment. The Authority was awarded McKinney Act funds, an audit of which revealed that $156,000.00 of these funds were inappropriately expended, which led to the discharge of the Petitioner.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM H. INMAN, SR. J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and CHARLES D. SUSANO, JR., JJ., joined.

William Allen, Oak Ridge, Tennessee, attorney for appellant, Linda G. Johnson.

Paul G. Summers, Attorney General and Reporter; Warren A. Jasper, Assistant Attorney General, General Civil Division, for appellee, Department of Labor and Workforce Development.

John E. Winters, Knoxville, Tennessee, attorney for appellee, Lenoir City Housing Authority.

## OPINION

### I.

An audit of Lenoir City Housing Authority revealed that $156,000.00 of federal funds had been inappropriately expended. The Executive Director of the Authority was terminated and she sought unemployment compensation which was initially awarded to her by the Department of Labor, whose decision was affirmed by the Appeals Tribunal. The decision of the Tribunal was reversed by the Board of Review which concluded the Plaintiff was discharged for misconduct connected with her employment, resulting in a denial of benefits. The decision of the Board of Review was affirmed on judicial review, and the Plaintiff appeals to this Court. Our review is *de novo* on the record, and we apply the same standard as the Chancellor in reviewing the case. ***Ford v. Traughber***, 813 S.W.2d 141 (Tenn. Ct. App. 1991).

**II.**

The Petitioner was the executive director of the Lenoir City Housing Authority from May 3, 1983, until December 6, 2001. She was discharged "for failure to comply with the directives of the Lenoir City Housing Authority Board of Directors," and because she was unable to satisfactorily explain apparent malfeasance and/or misfeasance with regard to certain HUD refinancing funds expended outside the allowed parameters.

An audit by the Knoxville Office of Public Housing, U.S. Department of Housing and Urban Development (HUD) revealed that the expenditure of about $156,000.00 of McKinney Act funds provided to the employer was not made in accordance with the requirements of that Act. Improper expenditures included purchases of "protective wear," including 72 pairs of socks, four pairs of gloves, six coats, one hat, a pair of overalls, and 19 pairs of boots and shoes.

Additionally, Petitioner allegedly accepted donation of a horse without authority from her employer potentially incurring additional expense liability of her employer. Although she was directed to return the horse, she failed to do so, and instead boarded the horse in another county at her employer's expense, including the construction of a shelter for the horse.

The audit determined that "[i]t is the responsibility of the [executive director] to remain cognizant of the laws, regulations, and HUD guidance regarding public housing operations and to ensure that the authority operates within those directives" and that "[i]t is also the [executive director's] responsibility to inform the Board of Commissioners regarding the laws, regulations and guidance impacting the programs operated by the authority" and to "[a]ssure that activities of the Authority are within federal, state and local laws, regulations, policies and procedures." The audit further found that "[h]ad this provision of the contract been met, the authority would not be in the tenuous position it currently finds itself" of facing reimbursement of the funds that were improperly spent.

**III.**

The Board of Review made these findings:

> FINDINGS OF FACT: The claimant's most recent employment prior to filing this claim for benefits was as the executive director of the Lenoir City Housing Authority from May 3, 1983 until December 6, 2001. She was discharged primarily "for failure to comply with the directives of the Lenoir City Housing Authority Board of Directors. Further, (the) claimant was unable to satisfactorily explain apparent malfeasance and/or misfeasance with regard to certain HUD refinancing funds expended outside the allowed parameters apparently for claimant's personal use."

A recent audit showed over $150,000 of expenditures from McKinney Act funds provided to the employer that were not in accordance with the requirements of that Act. The audit stated that "(i)t is the responsibility of the executive director to remain cognizant of the laws, regulations, and HUD guidance regarding public housing operations and to ensure that the authority operates within those directives. It is also the executive director's responsibility to inform the Board of Commissioners regarding the laws, regulations and guidance impacting the programs operated by the authority." It was the claimant's responsibility to "(a)ssure that activities of the Authority are within federal, state and local laws, regulations, policies and procedures." The audit further stated that "(h)ad this provision of the contract been met, the authority would not be in the tenuous position it currently finds itself: of facing reimbursement of the monies that were improperly spent.

## IV.

The standard for judicial review of unemployment insurance benefit cases is provided by Tenn. Code. Ann. § 50-7-304(i)(2) and (3):

> (2) The chancellor may affirm the decision of the [Board of Review] or . . . may reverse, remand or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>> (A) In violation of constitutional or statutory provisions;
>> (B) In excess of the statutory authority of the agency;
>> (C) Made upon unlawful procedure;
>> (D) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
>> (E) Unsupported by evidence which is both substantial and material in the light of the entire record.
> (3) In determining the substantiality of evidence, the chancellor shall take into account whatever in the record fairly detracts from its weight, but the chancellor shall not substitute the chancellor's judgment for that of the board of review as to the weight of the evidence on questions of fact. No decision of the board shall be reversed, remanded or modified by the chancellor unless for errors which affect the merits of the final decision of the board . . . .

These sections limit the reviewing court to questions of law if there is substantial and material evidence upon which the Board of Review based its findings. *See, Cawthron v. Scott*, 400 S.W.2d 240, 242 (Tenn. 1966).

## V.

The Appellant-Petitioner argues that the expenditures for clothing and boots were approved by her employer, and that checks for payment of these items were signed by one or more Board members. We agree with the Commissioner that the duty of the Petitioner was transcendent as to the McKinney Act funds which were expended inappropriately. It clearly was the duty of the Petitioner to safeguard these funds and spend them lawfully. While the audit report is hearsay, it was admissible and thus entitled to consideration. *Goodwin v. Metropolitan Bd. of Health*, 656 S.W.2d 383 (Tenn. Ct. App. 1983). The expenditure of the McKinney Act funds for apparel, etc., is not seriously disputed.

The statute does not define "misconduct connected with work." In *Weaver v. Wallace*, 565 S.W.2d 867, 870 (Tenn. 1978), the Supreme Court held that for conduct to amount to misconduct it must be a "breach of duty owed to the employer, as distinguished from society in general."

In *Armstrong v. Neel*, 725 S.W.2d 953, 955 (Tenn. Ct. App. 1986) we held that misconduct must at least be intentional conduct that materially breaches a duty the employee owes to the employer, and adopted the following standard from Wisconsin:

> . . . conduct evincing such willful and wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to the employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertence or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute." *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 296 N.W. 636, 640 (1941).

This standard was affirmed in *Cherry v. Suburban Mfg. Co.*, 745 S.W.2d 273, 275 (Tenn. 1988).

The issue is whether the Petitioner materially breached a duty owed to her employer. She had a duty to insure that the program's funds were expended properly, and it is clear that she did not do this.

-4-

The Board of Review found:

> CONCLUSIONS OF LAW: The Board finds the evidence sufficient to establish that the claimant was discharged for work-related misconduct within the meaning of T.C.A. § 50-7-303(a)(2) in this case. The evidence shows that the claimant's failure "to ensure that the authority operates" within the relevant governmental directives resulted in over $150,000.00 of expenditures that were not in accordance with those directives. It was the claimant's responsibility to make certain the monies were spent within established guidelines and to seek assistance for any expenditures that might be questionable. Her failure to do so substantially disregarded the employer's interests and constituted misconduct.

In response to a petition to rehear, the Board of Review also made the following conclusions:

> In petitioning the Board, the claimant requests another hearing to present witnesses who would testify that she performed her work with great ability and skill. She also includes copies of an agreement between the federal government and the local housing authority, with various appendices and other documents. In our opinion, this additional evidence would not outweigh her sworn admissions during the previous hearing about the numerous items of clothing and shoes for herself and employees that she either purchased or authorized others to purchase. Such excessive purchases out of public funds that were intended for the betterment of public housing were a conscious misuse of those funds, and justified her termination for cause.

### The Horse

A horse was donated to the Authority. Petitioner apparently believed that the security officer might become a mounted patrol and recommended that the officer, Ms. Ladd, be sent to an equestrian training school. A Board member testified that the Petitioner was instructed to return the horse. Ms. Ladd lived in another County. She took the horse to her residence and according to the testimony of a Board member, was given a check for $2000.00 with which to construct a shelter for the horse at her residence. The minutes reflect little about the horse; Petitioner argues that the weight of the proof supports her position that the gift of the horse was approved by the Board and that she was not instructed to return the horse. But the circumstances strongly tend to show that the Petitioner was insubordinate as claimed by the Commissioner; the horse was apparently released to Ms. Ladd, at the expense of the Authority.

The judgment is affirmed. Costs of the appeal are assessed against the Appellant-Petitioner, Linda G. Johnson.

_____
WILLIAM H. INMAN, SENIOR JUDGE