IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
March 16, 2005 Session

# MARTHA HALLOWELL v. VESTCO, INC., d/b/a WENDY'S, ET AL.

**A Direct Appeal from the Chancery Court for Henderson County**
**No. 17547      The Honorable James F. Butler, Chancellor**

_____

**No. W2004-01322-COA-R3-CV - Filed May 4, 2005**

_____

Appellant was asked to leave her job after she failed to comply with an order from her supervisor to comply with the dress code. Appellant was denied unemployment benefits because of work-related misconduct which was affirmed by the Board of Review. Appellant filed a Petition for Judicial Review in the chancery court. The chancery court affirmed the Board of Review and Appellant appeals. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY M. KIRBY, J., joined.

Beth Stricklin Bates of Jackson For Appellant, Martha Hallowell

Paul G. Summers, Attorney General and Reporter; Warren A. Jasper, Assistant Attorney General For Appellee, Commissioner James Neeley

**OPINION**

According to the findings of fact adopted by the Board of Review, Martha Hallowell ("Appellant") was employed by Vestco, Inc. d.b.a. Wendy's (hereinafter "Wendy's) from February 27, 2002 until January 22, 2003, when she was discharged for refusing to follow the instructions of her supervisor. Wendy's has a dress code that includes a certain shirt and certain type of trousers. The dress code provides that the shirt be tucked in and that the trousers have a belt with belt loops.[1] When Ms. Hallowell was hired, she asked that she be allowed to wear trousers with an elastic band and not to have to tuck her shirt into her trousers. Her request was granted and she came to work dressed that way for eleven months. About two weeks prior to her separation, a new manager took over operations at the store. He talked with Ms. Hallowell about wearing her shirt tucked in on

_____

[1] Wendy's dress code was not introduced into evidence and was not made part of the record on appeal.

several occasions and, on at least one occasion prior to the incident resulting in Ms. Hallowell's discharge, the manager had instructed her to tuck in her shirt. Ms. Hallowell refused. On the day of her separation, Ms. Hallowell was asked twice by the Store Manager to tuck in her shirt. She refused both requests and was eventually discharged.

On or about January 22, 2003, Ms. Hallowell filed an "Initial Claim for Unemployment Compensation" asserting that she was terminated for refusing to tuck in her uniform shirt as instructed by her supervisor. The Tennessee Department of Labor and Workforce Development (the "Agency") mailed Wendy's a "Notice of Claim Filed and Request for Separate Information" and, on January 30, 2003 Wendy's general manager submitted a written response to Ms. Hallowell's claim for unemployment benefits, which reads, in pertinent part, as follows:

> [Ms. Hallowell] was asked to follow the dress code while she was working and refused to do so. When she was asked to follow dress code she proceeded to become very upset and [used] foul language. She was asked to go home by the manager on duty. She was not fired. She was asked to come back and talk to the general manager to try to resolve the problem and she never came back. We were willing to work this out and allow her to continue to work, but we were not given the chance.

On January 31, 2003, the Agency informed Ms. Hallowell by letter that her claim for unemployment benefits was denied. The letter reads, in relevant part, as follows:

> [Ms. Hallowell] voluntarily left most recent work. [Ms. Hallowell] failed to return to talk to the General Manager after being sent home for violation of dress code.
>
> Although [Ms. Hallowell's] reason for leaving met [Ms. Hallowell's] personal needs, the reason is not considered a good work-related cause to quit under Tennessee Code Annotated 50-7-303.

On February 13, 2004, Ms. Hallowell filed a "Notice of Appeal" with the Agency's Appeals Tribunal (the "Tribunal"). On April 10, 2003, Ms. Hallowell appeared before the Tribunal for an evidentiary hearing. The Tribunal mailed its decision on April 10, 2003, affirming the Agency's decision. The Tribunal's decision reads, in pertinent part, as follows:

> **CONCLUSIONS OF LAW**: [Ms. Hallowell] was discharged when she refused to follow the instructions of the supervisor to tuck her shirt in her pants in accordance with the company dress code. An employee owes a duty to the employer to comply with reasonable instructions. An intentional failure to do so may be work connected

misconduct within the meaning of TCA § 50-7-303 (a)(2) such as to deny a claim for unemployment benefits.

[Ms. Hallowell] has argued that she should not have been discharged because the employer allowed her to continue to wear pants that did not match the dress code. She also argues that she had worn her shirt not tucked in for eleven months and if the employer was going to change the policy, they should have given her advance notice and several days to change.

As to the issue of pants there can be any number of reasons why a person making such decisions felt an exception to elastic band pants from pants with a belt loop was acceptable but a variation from having a shirt tucked in to one not tucked in was not acceptable. The fact the new manager was willing to allow the exception for the pants did not excuse [Ms. Hallowell's] refusal to follow his instructions about the shirt.

[Ms. Hallowell's] next argument was that she should have been given advance notice of the change in policy and time to adjust. It is true that if an employer wants to change policies, the employer needs to give the employees notice of that change and a sufficient time to adjust to the change. The employer did that in this case. The new manager had worked there for two weeks. The evidence shows that he had discussed with [Ms. Hallowell] several times prior to the day of her discharge the need to tuck her shirt in and on at least one occasion prior to the day of discharge had specifically instructed her to do so. Also on the day of [Ms. Hallowell's] discharge, she was told twice to tuck in her shirt. The length of time the employer needs to give an employee to adjust to new rules is based on what the employer is asking the employee to do. Since this involved the very simple procedure of tucking her shirt in, the amount of notice the employer gave [Ms. Hallowell] was more than adequate.

[Ms. Hallowell] has also argued that the new manager should have checked with his supervisor before making such an order, as [Ms. Hallowell] did have earlier permission to wear her shirt the way she did. There is no evidence that the new manager did not check with his supervisor on the matter. If [Ms. Hallowell] had problems with the new instructions from the manager, the proper procedure for her to have followed in this case was to comply with the instructions until she had an opportunity to meet with a district manager or owner and not disobey what otherwise seems to have been the reasonable

instructions of her immediate supervisor until [s]he did that. The evidence is sufficient to show that [Ms. Hallowell's] discharge was for work connected misconduct under TCA § 50-7-303 (a)(2).

**DECISION**: The Agency Decision denying this claim is modified. [Ms. Hallowell] is not eligible for unemployment benefits under TCA § 50-7-303(a)(2). The claim is denied as of the date of filing and until [Ms. Hallowell] qualifies for benefits in accordance with the Tennessee Employment Security Law. Ms. Hallowell then appealed to the Agency's Board of Review (the "Board"). By letter of June 11, 2003, the Board affirmed the decision of the Tribunal. The Board specifically found that the "Tribunal correctly found the facts and applied the law under TCA § 50-7-303(a)(2)." Ms. Hallowell filed a Petition to Rehear with the Board, which was denied by letter of August 4, 2003.

On September 11, 2003, Ms. Hallowell filed a "Petition for Judicial Review of Denial of Unemployment Compensation Benefits" against James G. Neeley, Commissioner of the Tennessee Department of Labor and Workforce Development and Wendy's (together "Appellees") seeking judicial review of the Board's decision denying her unemployment compensation. On April 22, 2004, the trial court entered an "Order of Dismissal" (the "Order"), which affirmed the decision of the Board.

Ms. Hallowell appeals and raises two issues for review as stated in her brief:

I. Whether Hallowell's appeal to higher management when ordered to tuck in her shirt was work-related misconduct.

II. Whether the appellant's failure to tuck in her shirt was "work related misconduct" within the meaning of Tennessee Code Annotated § 50-7-303(a)(2).

The standard of review for administrative decisions involving claims for unemployment compensation is set out in T.C.A. § 50-7-304(i)(2) (Supp. 2004), which we quote:

(2) The chancellor may affirm the decision of the board or the chancellor may reverse, remand or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(A) In violation of constitutional or statutory provisions;
(B) In excess of the statutory authority of the agency;

-4-

(C) Made upon unlawful procedure;
(D) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(E) Unsupported by evidence which is both substantial and material in the light of the entire record.

T.C.A. § 50-7-304 further specifies that "[i]n determining the substantiality of evidence, the chancellor shall take into account whatever in the record fairly detracts from its weight, but the chancellor shall not substitute the chancellor's judgment for that of the board of review as to the weight of the evidence on questions of fact." T.C.A. § 50-7- 304(i)(3).

The Court of Appeals applies the same standard as the trial court in reviewing trial court decisions in unemployment compensation cases. *See Ford v. Traughber*, 813 S.W.2d 141 (Tenn. Ct. App.1991). Substantial and material evidence has been defined as any "relevant evidence which a reasonable mind might accept to support a rational conclusion and which furnishes a reasonably sound basis for the action being reviewed." *Frogge v. Davenport*, 906 S.W.2d 920, 922 (Tenn. Ct. App.1995)(citing *Southern R. Co. v. State Bd. of Equalization*, 682 S.W.2d 196, 199 (Tenn.1984)). In *Sabastian v. Bible*, 649 S.W.2d 593 (Tenn. Ct. App.1983), this Court said:

> In order to sustain the Board of Review's application of the provisions of the statute, we need not find that its construction is the only reasonable one or even that it is the result we would have reached had the question arisen in the first instance in a judicial proceeding. The reviewing court's function is severely limited. All that is needed to support the commission's interpretation is that it has warrant in the record and a reasonable basis in law.

*Id*. at 594-95 (citing *Cawthron v. Scott*, 217 Tenn. 668, 400 S.W.2d 240, 242 (Tenn.1966)).

Consequently, we first review the record to determine whether there is substantial and material evidence to support the Board's findings. Ms. Hallowell was the only party to appear and testify before the Tribunal. At her hearing, Ms. Hallowell testified in relevant part, as follows:

> Ms. Hallowell: I was told to go home after I had clocked in about 40 minutes.
>
> Mr. Rogers: Okay.
>
> Ms. Hallowell: And after this incident, I–
>
> Mr. Rogers: After what incident?

Ms. Hallowell: Of him telling me to tuck my shirt in.

Mr. Rogers: All right.  Now, so this is the manager and he told you to tuck your shirt in.

Ms. Hallowell: I'm assuming he's the manager.

Mr. Rogers: All right.  Did you tuck your shirt in?

Ms. Hallowell: No, I did not because–

Mr. Rogers: And why not?

Ms. Hallowell:  –I asked him to go check.

Mr. Rogers: All right.

Ms. Hallowell: Because I felt he should have went [sic] and check [sic] with somebody.  I felt like–because I had never had a problem with it except him.  You know?  He's here filling–

Mr. Rogers: All right.  So, he asked you to tuck your shirt in?

Ms. Hallowell: Uh-huh.

Mr. Rogers: And you asked him to check with who?

Ms. Hallowell: The manager.  The main manager or anybody up above him that had told me I could do this [wear the uniform shirt outside the trousers].

\*                                  \*                                  \*

Mr. Rogers: How many times did this–did the store manager ask you to tuck your shirt in?

Ms. Hallowell: I think twice.

Mr. Rogers: Twice?  Okay.  When he asked you to do it the second time, [did] you tuck your shirt in?

Ms. Hallowell: No, I did not because I would have had to have been issued some slacks.

             \*                        \*                      \*

> Mr. Rogers: Let me ask you this, before this particular day, had this manager asked you on any other day also to tuck in your shirt, or was this the first time he had asked you?
>
> Ms. Hallowell: He might have once.

Ms. Hallowell's own testimony supports the findings of fact by the Tribunal, which were affirmed and adopted by the Board, that she failed to comply with the instructions of her direct supervisor on more than one occasion.

Since the facts are virtually undisputed, the question of whether Ms. Hallowell's actions constitute "misconduct" under T.C.A. § 50-7-304 is a question of law. As such, our review is *de novo* upon the record with no presumption of correctness accompanying the trial court's conclusions of law. *See* Tenn. R. App. P. 13(d).

T.C.A. § 50-7-303(a)(2) (Supp. 2004) provides in pertinent part:

> (a) DISQUALIFYING EVENTS. A claimant shall be disqualified for benefits:
>
>       \*                      \*                      \*
>
> (2) If the administrator finds that a claimant has been discharged from such claimant's most recent work for misconduct connected with such claimant's work, such disqualification shall be for the duration of the ensuing period of unemployment and until such claimant has secured subsequent employment covered by an unemployment compensation law of this state....

*Id*.

Although this statute does not define "misconduct connected with such claimant's work," our Supreme Court, in dealing with the meaning of this phrase, said:

> [A]n essential element of 'misconduct connected with the work' is a breach of duty owed to the employer, as distinguished from society in general.

*Weaver v. Wallace*, 565 S.W.2d 867, 870 (Tenn.1978) (citing *Detterer v. Unemployment Compensation Board of Review*, 168 Pa.Super. 291, 77 A.2d 886 (1951); *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 296 N.W. 636 (Wis.1941)).

In *Armstrong v. Neel*, 725 S.W.2d 953, 955 (Tenn. Ct. App. 1986), this Court held that misconduct must be at least intentional conduct that materially breaches a duty the employee owes to the employer. The *Armstrong* Court went on to adopt the following standard:

> [C]onduct evincing such wilful and wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to the employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertences or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute.

*Armstrong*, 725 S.W.2d at 956 (citing *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 296 N.W. 636, 640 (1941)). The Tennessee Supreme Court later confirmed this standard in *Cherry v. Suburban Mfg. Co.*, 745 S.W.2d 273, 275 (Tenn. 1988), to wit: "[I]n order to establish a disqualification, there must be shown a material breach of some duty which the employee owes to the employer." Consequently, the question in the case at bar is whether Ms. Hallowell's request that her supervisor speak to a more senior supervisor and/or her failure to comply with the supervisor's instruction to tuck in her shirt, constitutes a material breach of a duty she owed to her employer.

This Court in *Russell v. Culpepper*, 1997 WL 129110 (Tenn. Ct. App. March 21, 1997) stated:

> The classic example of "a deliberate violation" or "disregard of standards of behavior which the employer has the right to expect of his employee" is an employee's refusal to perform a task which a supervisor requests of that employee. We hold that an employee's refusal to follow the lawful requests of a supervisor is misconduct connected with such claimant's work within the meaning of T.C.A. 50-7-303(a)(2). *See also Boyd v. Bible*, an unreported opinion of this Court, filed in Nashville on February 1, 1984("[W]here an employee has engaged in dishonest conduct or has intentionally refused to carry out his employer's orders, the legislature has rationally determined

-8-

that exclusion from this government protection is warranted."); ***Hinson v. Kelley***, an unreported opinion of this Court, filed in Nashville on July 22, 1987 ("[D]isobedienece of the lawful orders of a superior can scarcely be doubted, and we do not doubt that such deliberate, perhaps arrogant, disobedience is 'misconduct connected with his work.' ").

***Id***. at *3.

Although Ms. Hallowell's request that the new supervisor call the general manager or owner to confirm that she did not have to wear her shirt tucked may not have been, in and of itself, "misconduct" under the above definitions, as the Tribunal correctly found in its "Conclusions of Law," Ms. Hallowell should have complied with her supervisor's directive pending review by upper management. Her refusal to carry out the supervisor's orders to tuck in her uniform shirt, especially after having been told several times to do so, is a breach of a basic duty owed by an employee to his or her employer under the above definitions. Accordingly, there is a reasonable basis in law to support the decision of the Board and this matter was properly affirmed by the chancery court.

For the foregoing reasons, we affirm the Order of the trial court. Costs of this appeal are assessed against the Appellant, Martha Hallowell, and her surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.