IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 12, 2007 Session

# HELEN L. BATES v. JAMES G. NEELEY, COMMISSIONER OF THE TENNESSEE DEPARTMENT OF LABOR AND WORKFORCE DEVELOPMENT, ET AL.

**Appeal from the Chancery Court for Lewis County**
**No. 4834     Timothy Easter, Judge**

**No. M2006-01023-COA-R3-CV - Filed on March 16, 2007**

A former employee of the Highland Youth Center appeals the denial of her claim for unemployment benefits. The employee was subjected to a severe assault while at work at the youth center. She attempted to return to work after the incident but was unable to remain at work due to the severe psychological trauma associated with the assault at the workplace. She filed a claim for unemployment benefits, which was denied by the Department of Labor, the Appeals Tribunal, and the Board of Review on the ground she did not have "good cause" to terminate her employment. The Chancery Court affirmed the denial of benefits, and this appeal followed. We reverse finding the employee had good cause for terminating her employment at the Highland Youth Center.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and DONALD P. HARRIS, SR. J., joined.

David Kozlowski, Columbia, Tennessee, for the appellant, Helen L. Bates.

Robert E. Cooper, Jr., Attorney General and Reporter; and Lauren S. Lamberth, Assistant Attorney General, for the State of Tennessee.

## OPINION

Highland Youth Center is a residential facility that houses young men who have been committed to state custody by various juvenile courts. Several of the young men are sex offenders.

The plaintiff, Helen Bates, was employed as a kitchen supervisor at the Highland Youth Center from January of 2001 to July of 2003. Her duties of kitchen supervisor included assisting the cooks, ordering groceries, and ensuring the residents received three meals per day. She had no responsibility for the discipline or control of the residents.

Ms. Bates worked at the Center without incident for two and one-half years until July of 2003 when she was seriously assaulted by one of the residents when working alone in the kitchen. On the evening of Sunday, July 13, 2003, Ms. Bates was working alone cleaning the kitchen after the evening meal when one of the residents approached her from behind and put her in a choke hold. As they struggled, he forced her into a closet. As she tried to resist and fight her assailant, he became more aggressive and tightened his grip on her neck. She eventually felt faint and dropped to the ground. As she fell, he lost the grip on her neck and fled the closet and the building. She screamed for help but no one came to her aid.[1] As a consequence, Ms. Bates had to leave the kitchen area to seek assistance and report the assault.

Three days later, Ms. Bates returned to work at the kitchen at Highland Youth Center. When she reported to work she discovered that she was unable to remain there due to the psychological trauma associated with the workplace. As a consequence, she left work without completing her shift. Ms. Bates sought psychological counseling, but has not been able to return to work at Highland Youth Center.

In March 2004, Ms. Bates filed a claim for unemployment benefits. The Department of Labor denied the claim, which she appealed to the Appeals Tribunal. The Appeals Tribunal affirmed the denial of benefits holding that the assault by a resident at Highland Youth Center did not constitute a "good, work-related reason to resign." Ms. Bates appealed the decision to the Board of Review, which affirmed the Appeals Tribunal. Thereafter, Ms. Bates filed a Petition for Judicial Review. Following a hearing, the Chancellor affirmed the denial of her claim based upon a finding that Ms. Bates was aware of the nature of the facility where she worked and of the offenses of the residents. The Chancellor further found that she worked there without incident for two and a half years, she knew of the policy permitting the residents to work in the kitchen, the assault was random and unforeseeable, and the facility remedied the situation with the new policy prohibiting unsupervised residents from working in the kitchen. This appeal followed.

Ms. Bates contends the psychological trauma resulting from the attack, and the association of that event with the workplace, constituted good cause for her to voluntarily terminate her employment and thus did not disqualify her for benefits. As an additional issue, the Department contends that Ms. Bates is ineligible for unemployment benefits because she applied for and received Workers' Compensation benefits.

The material facts are not disputed. The issues presented hinge on the proper interpretation of statutes and their application to the facts of this case. Issues involving the construction of statutes and their application to facts involve questions of law. *Memphis Publ'g Co. v. Cherokee Children & Family Servs., Inc.*, 87 S.W.3d 67, 74 (Tenn. 2002); *Waller v. Bryan*, 16 S.W.3d 770, 773 (Tenn.

---

[1]For reasons that defy explanation, no guards were stationed in the kitchen even though residents with serious offenses were present to go to the kitchen where Ms. Bates worked alone. Following the assault on Ms. Bates, Highland Youth Center implemented a new policy, which prohibited residents from working in the kitchen area unless they were under supervision.

Ct. App. 1999). Whether a claimant left work with or without "good cause" is a question of law. *See Darden v. York*, 958 S.W.2d 768, 770 (Tenn. Ct. App. 1997). Therefore, we will review the issues de novo and reach our own independent conclusions regarding them. *King v. Pope*, 91 S.W.3d 314, 318 (Tenn. 2002).

The Tennessee General Assembly stated the public policy of this state with regard to unemployment benefits as follows:

> [e]conomic insecurity due to unemployment is a serious menace to the health, morals and welfare of the people of this state. Involuntary unemployment is, therefore, a subject of general interest and concern that requires action by the general assembly to prevent its spread and to lighten its burden that now so often falls with crushing force upon the unemployed worker and such worker's family. The achievement of social security requires protection against this greatest hazard to our economic life. This can be provided by encouraging employers to provide more stable employment and, by the systematic accumulation of funds during periods of employment, to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. The general assembly, therefore, declares that in its considered judgment the public good and general welfare of the citizens of this state require the enactment of this measure, under the police powers of the state, for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.

Tenn. Code Ann. § 50-7-102(a).

Under the statutory scheme for employment security benefits, an unemployed claimant shall be eligible to receive benefits if the Administrator finds the conditions set forth in Tenn. Code Ann. § 50-7-302(a) are met. Significant to the claim at issue, however, a claimant shall be disqualified for benefits if the Administrator finds that the claimant left her most recent work "voluntarily without good cause connected with such claimant's work." Tenn. Code Ann. § 50-7-303.

The issue here is whether Ms. Bates' voluntary termination of her employment was with or without good cause connected with her employment at Highland Youth Center. We have concluded the voluntary termination of her employment was with good cause connected with her employment at the Center.

The Department does not dispute the fact that Ms. Bates was assaulted at work or that Ms. Bates voluntarily terminated her employment because of the assault; however, it contends Ms. Bates does not have good cause for not returning to her employment because the problem that led to the assault has been remedied. The Department, however, fails to consider the effect the assault had and continues to have on Ms. Bates. Moreover, the Department fails to recognize that its belated remedy does not mitigate the enduring psychological trauma associated with the workplace.

The horrific ordeal Ms. Bates endured was a most serious traumatic event, one from which Ms. Bates continues to endure psychological distress, which was exacerbated when she attempted to return to her work at the Center. We, therefore, conclude the assault suffered by Ms. Bates at her place of employment, coupled with the enduring psychological trauma resulting therefrom, which is associated with the workplace, constitutes "good cause" under Tenn. Code Ann. § 50-7-302(a).

As an additional issue, the Department contends that Ms. Bates is ineligible for unemployment benefits because she applied for and received Workers' Compensation benefits.[2] The Department's argument is premised on Tenn. Code Ann. § 50-6-108(a) of the Workers' Compensation Law which provides:

> The rights and remedies granted to an employee subject to the Workers' Compensation Law, compiled in this chapter, on account of personal injury or death by accident, including a minor whether lawfully or unlawfully employed, shall exclude all other rights and remedies of such employee, such employee's personal representative, dependents or next of kin, at common law or otherwise, on account of such injury or death.

Tenn. Code Ann. § 50-6-108(a). The Department, however, has not cited any authority to support its contention that the exclusive remedy provision bars a claim for unemployment benefits under Tenn. Code Ann. § 50-7-101. We, too, have found no such authority. Moreover, we find exceptions to the exclusivity rule that are akin to Ms. Bates' claim for unemployment benefits. *See Leatherwood v. United Parcel Serv.*, 708 S.W.2d 396, 401 (Tenn. Ct. App.1985) (holding a cause of action for retaliatory discharge against employer who discharged worker for making workers' compensation claim would not be within the exclusive remedy rule provided by Workers' Compensation Act). We therefore conclude that the exclusive remedy provision under Tenn. Code Ann. § 50-6-108(a) does not constitute a bar to Ms. Bates' claim for unemployment benefits.

The judgment of the trial court is reversed, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against the Department of Labor and Workforce Development.

FRANK G. CLEMENT, JR., JUDGE

---

[2]Three months after the Chancery Court's decision, Ms. Bates and Highland Youth Center entered into a workers' compensation settlement wherein Ms. Bates received $35,000 based on 45.43% permanent partial disability to the body as a whole for post-traumatic stress resulting from the assault.